Lawrance A. Bohm (SBN: 208716)
Zane E. Hilton (SBN: 305217)
Tracy C. Law (SBN: 314936)
**BOHM LAW GROUP, INC.**
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834
Telephone:  866.920.1292
Facsimile:  916.927.2046

Attorneys for Plaintiff,
MIGUEL AGUILERA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL AGUILERA,<br><br>           Plaintiff,<br><br>      v.<br><br>CONTRA COSTA COUNTY SHERIFF'S OFFICE; and DOES 1 through 50, inclusive,<br><br>           Defendants. | Case No.:<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES:**<br><br>1. **USERRA Violation;**<br>2. **Discrimination Based on Military and Veteran Status;**<br>3. **Discrimination Based on Sexual Orientation;**<br>4. **Disability Discrimination;**<br>5. **Hostile Work Environment Harassment Based on Sexual Orientation;**<br>6. **Hostile Work Environment Harassment Based on Disability**<br>7. **Hostile Work Environment Harassment Based on Race;**<br>8. **Retaliation; and**<br>9. **FMLA/CFRA Interference.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Miguel Aguilera respectfully submits the instant Verified Complaint for Damages and Demand for Jury Trial, and alleges as follows.

///

///

1

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:                                                                    Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

1

## OVERVIEW OF THE CASE

2   The Contra Costa Sheriff and all his Deputies take an oath—a pledge of service to the

3   community and a commitment to each other. This oath, available publically on its website,

4   requires Sheriff's office staff and deputies to abide by an uncompromising code of integrity. A

5   central tenet of this oath is a commitment to show respect towards all people, without regard to

6   race, religion, or gender, and to care for the professional, personal, and spiritual well-being of co-

7   workers. The Sheriff has failed this oath and the community his office was supposed to serve by

8   harassing a Hispanic Sherriff's Deputy for nearly a decade because of his sexual orientation and

9   his commitment to serve his country as a Marine.

10  Sheriff David Livingston's office deliberately denied promotions and raises to a qualified

11  and competent Deputy because of his military service and sexual orientation. Deputies subjected

12  him to a campaign of harassment which included spreading rumors about his sexuality, making

13  false claims about his ability do his job, and attempting to have him forcibly committed. The

14  harassment was so egregious that even the inmates at Martinez Detention Facility were aware that

15  the other deputies were "out to get him," exposing him to a significant risk of harm. Further, when

16  this deputy complained of this harassment and other violations of department policy, he was

17  subjected to increased harassment, denied promotional opportunities, threatened on social media

18  by his superiors, and ultimately forced out on leave.

19

## PARTIES AND JURISDICTION

20  1.    Plaintiff Miguel Aguilera (hereinafter "Aguilera" or "Plaintiff") was at all times

21  relevant to this action, a recruit, employee or wrongfully terminated employee of Defendant.

22  While employed by Defendant, and at all times relevant to this action, Plaintiff resided in Contra

23  Costa County, California.

24  2.    Defendant Contra Costa County Sheriff's Office (hereinafter "CCCSO" or

25  "Defendant") was at all times relevant to this action a public entity located at 651 Pine Street,

26  Martinez, California. Defendant was at all times a relevant "Employer" as defined by 42 United

27  States Code section 2000e and Government Code section 12926, subdivision (d).

28  ///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

3.     Jurisdiction is proper in this Court as this action arises under federal law: for example, provisions of 38 United States Code sections 4311 – 4312.

4.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 50. Defendants DOES 1 through 50 are sued herein under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each Defendant sued under such fictitious names are in some manner responsible for the wrongs and damages as alleged herein. Plaintiff does not at this time know the true names or capacities of said Defendants, but prays that the same may be inserted herein when ascertained.

5.     At all times relevant, each and every Defendant was an agent and/or employee of each and every other Defendant. In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment, and was acting with the consent, permission, and authorization of each remaining Defendant. All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents.

## STATEMENT OF FACTS

6.     On or about February 21, 2006, Miguel Aguilera ("Aguilera") was hired as a Deputy Sheriff Recruit by the Contra Costa County Sherriff's Office ("CCCSO"). Upon his hire, Aguilera, along with every other new recruit, was sent to The Academy, a law enforcement training facility in Pittsburgh, California, for basic training.

7.     On or about October 1, 2006, Aguilera graduated from The Academy and was promoted to Deputy Sheriff. Aguilera was assigned to the Martinez Detention Facility and began the jail field training program. While Aguilera was a trainee, he was supervised by the Field Training Officers ("FTOs"). Aguilera received daily evaluations from the FTOs while he was in the training program. Negative evaluations or counselling remarks affected whether Aguilera successfully completes his training program.

///

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

8.    On or about October 3, 2006, Aguilera was given active military duty orders. Aguilera was a reservist in the Marine Corps, but was called into active duty by a presidential recall. Until this time, Aguilera did not experience any incidents of harassment.

9.    On or about October 6, 2006, Aguilera was deployed in support of Operation Enduring Freedom for approximately twelve (12) months. Aguilera took a military leave of absence for his deployment until his return on October 8, 2007.

10.    In or around July 2007, Aguilera informed CCCSO that he was returning from his deployment in October 2007. CCCSO instructed Aguilera to report to the Martinez Detention Facility on or about October 8, 2007.

11.    On or about September 4, 2007, Aguilera received a call from a deputy, who told Aguilera that the FTOs were planning to "fuck with" Aguilera when he returns from military leave. The FTOs that the deputy named were Deputies Tillman, Shawn Slouse ("Dep. Slouse"), Douglas Muse ("Dep. Muse"), Brian Foreman ("Dep. Foreman"), and Scott Griggs ("Dep. Griggs"). Aguilera thanked the deputy for the information and expressed his intention of starting a logbook.

12.    On or about October 8, 2007, Aguilera returned to Martinez Detention Facility from military leave. Aguilera was placed into the jail training program because he had not completed his training prior to leaving on his deployment. Aguilera was assigned to Dep. Griggs as a First Phase FTO, whose responsibilities included observing Aguilera at all times during his shift. Martinez Detention Facility contained nine (9) modules, in which the inmates were housed. Aguilera was initially assigned to D-module with Dep. Foreman.

13.    On or about October 15, 2007, an inmate was refusing to return to his cell. Aguilera struggled to restrain the inmate in order to return him to his cell. Dep. Foreman, who is much larger and stronger than Aguilera, intervened and instructed Aguilera to let him handle it. Aguilera complied with Dep. Foreman's instructions and Dep. Foreman restrained the inmate.

14.    On or about October 15, 2007, Dep. Griggs counselled Aguilera for not assisting Dep. Foreman with the inmate. Aguilera explained that he was merely following Dep. Foreman's instructions to allow him to handle the situation. Dep. Griggs stated that he did not care.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

4

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

Воhm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

15.     On or about October 22, 2007, Aguilera and Deputy Nathan Behrman ("Dep. Behrman") got into an unrelated disagreement about an inmate. Dep. Behrman yelled, "I don't care if you went to the military and came back. Don't think you're going to get any type of special treatment."

16.     On or about October 23, 2007, Aguilera was left to guard F-module alone. Each module had two floors and were equipped with a number of cameras that could be viewed by either Central Control, Intake, or D-Module. Each module also contained a Deputy Station on the first floor, where the deputies had access to the phone. Following procedure, Aguilera conducted room checks to ensure that the inmates were in their cells and not engaging in disallowed activities. When Aguilera went upstairs to conduct room checks for the upper floor, Dep. Behrman, stationed in Intake, pushed the call button, which rang the phone at the Deputy Station. Following proper procedure, upon hearing the phone ring, Aguilera returned downstairs to the Deputy Station to answer the call. Each time Aguilera picked up the phone, Dep. Behrman hung up without saying a word. Dep. Behrman did this five (5) times while Aguilera was conducting room checks.

17.     Later that day, another deputy informed Aguilera that Dep. Behrman was watching Aguilera on the security cameras. Dep. Thomas stated that Dep. Behrman waited until Aguilera was upstairs to push the call button to ring the phone at the Deputy Station.

18.     On or about October 23, 2007, an unknown individual called the Deputy Station in Aguilera's module during the middle of the night. The unknown individual pretended to be the Jail Cook and asked for the number of inmates who would be present for breakfast. Aguilera found this to be odd because the Jail Cook typically only called once and only in the morning. This happened seven (7) times throughout Aguilera's shift.

19.     On or about October 23, 2007, Aguilera complained to Deputy Michael Rector ("Dep. Rector") regarding Dep. Behrman's harassing behavior. Aguilera stated that he did not have anyone to bring his concerns to because there was no training sergeant after Sergeant Devon Watts ("Sgt. D. Watts") left. Aguilera felt that he could not go to Lieutenant Steve Simpkins ("Lt. Simpkins") because in his military experience, going over the Sergeants to speak with the

5

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

Lieutenants constituted jumping the chain of command and was inappropriate. Dep. Rector stated that he was aware that the FTOs were trying to sabotage Aguilera and the training program was better when Sgt. D. Watts was running it.

20.    Later that day, Dep. Behrman approached Aguilera and accused him of speaking ill about Lt. Simpkins. Aguilera suspected that Dep. Behrman saw him speaking with Dep. Rector on the cameras and listened in on the conversation through the microphones. Aguilera assured Dep. Behrman that he was not saying anything negative about Lt. Simpkins, but was bemoaning the fact that he had no supervisor to turn to for help. Dep. Behrman then accused Aguilera of saying that Lt. Simpkins was not doing his job. Aguilera responded that it was obvious that Dep. Behrman listened in on his conversation with Dep. Rector. Aguilera again denied speaking ill about Lt. Simpkins and told Dep. Behrman that if he still did not believe Aguilera, he can confirm with Dep. Rector himself. Dep. Behrman scoffed and walked away.

21.    After speaking with Dep. Behrman, Aguilera relayed this conversation to Dep. Rector, who advised that Aguilera speak with Lt. Simpkins directly before Dep. Behrman did. Dep. Rector additionally offered to answer any questions that Lt. Simpkins may have because he did not think there was anything untoward about what Aguilera said.

22.    On or about October 24, 2007, Aguilera informed Lt. Simpkins of Dep. Behrman's accusations and clarified what he actually said to Dep. Rector. Lt. Simpkins stated that it was true that Sgt. D. Watts one of the best training sergeants at CCCSO and he knew Aguilera would not speak negatively of his superiors. Lt. Simpkins then asked Aguilera if he was planning to leave for another police department. Aguilera felt that Lt. Simpkins was threatening to fire him if he indicated a desire to leave. Aguilera denied having any intention of leaving. Lt. Simpkins warned Aguilera to be loyal to CCCSO and dismissed Aguilera from the conversation.

23.    On or about October 25, 2017, another Deputy warned Aguilera to watch out for the FTOs. The Deputy told Aguilera that he was aware that the FTOs had planned to "fuck with [him]" when Aguilera returned from military leave. The Deputy then questioned why Aguilera was remediating First Phase FTO. The Deputy stated that while they were training together before Aguilera's deployment, Aguilera performed much better than him. Aguilera responded that he

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:                                                                            Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

1    was planning on talking to Lt. Simpkins about what he was experiencing.

2        24.    On or about October 25, 2007, Deputy David Landano ("Dep. Landano")

3    complimented Aguilera on his proficiency during a drill. Dep. Landano stated that he did not see

4    any of the negative traits referred to in Aguilera's evaluations.

5        25.    On or about November 1, 2007, Aguilera was assigned to work with Dep. Behrman

6    in F-Module. Over the course of his training, Aguilera was instructed to ensure that inmates who

7    had to be transported to the courthouse were removed from the module by 10 a.m. That way, the

8    deputies can efficiently conduct a formal count of the inmates left in the module at 11 a.m. At

9    approximately 10:10 a.m., Deputy Michael Sagan ("Dep. Sagan"), whose responsibilities

10   included transporting inmates to the courthouse, came by to speak with Dep. Behrman about non-

11   work related topics. When Aguilera noticed that they had been speaking for a significant amount

12   of time, Aguilera asked Dep. Sagan to take the inmates designated for transportation off the

13   module so he could do the formal count soon. After Dep. Sagan left, Dep. Behrman screamed at

14   Aguilera, reminding him that just because he was in the Marine Corps, and even though he

15   technically had more seniority than Dep. Sagan, he was still a trainee and had no authority to give

16   orders to Dep. Sagan. Aguilera responded, "Yes, sir," and continued with his duties.

17       26.    Later in that shift, Dep. Behrman reiterated to Aguilera that he should not have

18   told Dep. Sagan what to do and that his time in the military did not give him that authority.

19   Aguilera responded by confronting Dep. Behrman about how he has treated Aguilera since

20   training started. Aguilera further stated that he was only trying to do his job like he was trained,

21   and Dep. Sagan and Dep. Behrman were distracting him from his duties rather than assisting and

22   mentoring him. Dep. Behrman was furious and told Aguilera to "get the hell off the module."

23       27.    Aguilera left the module and went immediately to speak with Sergeant Jeff

24   Baldwin ("Sgt. Baldwin") about his confrontation with Dep. Behrman. Sgt. Baldwin implied that

25   Dep. Behrman's behavior was part of the job and that Aguilera should calm down. Sgt. Baldwin

26   stated that while he would speak with Dep. Behrman, he was not the Training Sergeant and

27   Aguilera will have to bring the situation to Lt. Simpkins.

28   ///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

---

**Plaintiff's Complaint for Damages and Demand for Jury Trial**    Lawrance A. Bohm, Esq.
*Aguilera v. Contra Costa County Sheriff's Office*    Zane E. Hilton, Esq.
Case No.:    Tracy C. Law, Esq.

28.     On or about November 2, 2007, Lt. Simpkins called Aguilera into his office and told Aguilera that he was aware of what happened with Dep. Behrman. Lt. Simpkins stated that if he were in Dep. Behrman's place and Aguilera told another officer to leave because he was busy, Lt. Simpkins would "beat [his] ass." Aguilera felt threatened by Lt. Simpkins' statement. Lt. Simpkins further commented that he was surprised Dep. Behrman and Dep. Sagan did not do the same. Aguilera responded that he was only trying to do his job and get an accurate count of the inmates. Lt. Simpkins ignored Aguilera's explanation and told him he was being assigned to West County, a minimum security detention facility.

29.     On or about November 2, 2007, Dep. Behrman instructed Aguilera to conduct a Water Shut Off Drill, which tested deputy response in the event of a flood in the jail. In the middle of the Water Shut Off Drill, Dep. Behrman had Central Control call Aguilera for a Smoke/Fire Alarm Drill. Faced with two simultaneous drills, Aguilera decided to finish completing the Water Shut Off Drill first before beginning the Smoke/Fire Alarm Drill. At the completion of the drills, Dep. Behrman berated Aguilera for not completing the Water Shut Off Drill first, yelling that the building was now flooded because Aguilera took too long. Aguilera explained his decision to prioritize a potential fire over water damage by stating that inmates were more likely to die in a fire than an active sprinkler or an over flooded toilet. Dep. Behrman disregarded Aguilera's explanation. Upon information and belief, Aguilera alleges that Dep. Behrman put Aguilera in a position where it was impossible to succeed in order to artificially make Aguilera appear to be an incompetent deputy.

30.     On or about November 5, 2007, Aguilera was approached by Deputy Ryan Montoya ("Dep. Montoya") in the parking lot at West County. Dep. Montoya stated that he heard that some FTOs were "fucking with [Aguilera]" and he wanted to offer his support. Aguilera was surprised and embarrassed that a deputy in another facility knew about what was happening to him.

31.     On or about November 5, 2007, Aguilera was introduced to his new FTO at West County, Deputy Cassandra Watts ("Dep. Watts"). Dep. Watts explained that she heard many negative rumors about Aguilera's ability as a deputy, but she wanted to give him a fair chance.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

8

**Plaintiff's Complaint for Damages and Demand for Jury Trial**          Lawrance A. Bohm, Esq.
*Aguilera v. Contra Costa County Sheriff's Office*          Zane E. Hilton, Esq.
Case No.:          Tracy C. Law, Esq.

32. On or about November 6, 2007, Deputy Prandi ("Dep. Prandi") approached Aguilera and shared that he heard rumors about what Aguilera was going through at the Martinez Detention Facility. Dep. Prandi further advised Aguilera to keep a log of everything that occurred to protect himself. Dep. Prandi warned that he has been with the department for over fifteen (15) years and has seen some "shady shit" occur. Dep. Prandi elaborated that CCCSO, in particular the FTOs, is vindictive against employees who complain.

33. On or about November 20, 2007, Aguilera returned to Martinez Detention Facility. Aguilera met with Lt. Simpkins to review his time at West County. Lt. Simpkins stated that he believed Aguilera only received good evaluations because he was not pushed hard enough by the West County FTOs. Lt. Simpkins then stated, "Quit being a fuck up and get your head out of your ass," and dismissed Aguilera from the meeting.

34. On or about November 20, 2007, Aguilera placed an inmate and his attorney in a visiting room, and secured the inner door. The outer door is controlled only by Central Control and is only to be opened at the deputy's direction or when the inmate is no longer in the visiting room. A few minutes later, Aguilera saw the attorney walk out of the visiting room without Aguilera having called for that door to open. Central Control mistakenly unlocked the door. On information and belief, Aguilera alleges a negative remark regarding this incident was written in Aguilera's daily evaluation.

35. On or about November 21, 2007, Aguilera observed an inmate go to the Deputy Station and switch off the count lights when count was complete. The count lights illuminated every cell and were turned on by deputies during the formal count. When Aguilera spoke with the inmate, the inmate stated that other deputies often ordered him to turn off the lights and grab bags from behind the desk for them. Aguilera asked the inmate not to go to the Deputy Station while Aguilera was on shift.

36. Later that day, Aguilera was counseled by Dep. Slouse for telling the inmate not to go to the Deputy Station, although that was a violation of CCCSO policy. It was well known at CCCSO that certain policies did not have to be followed, but Aguilera felt that it was important to follow the rules while he was on probation.

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

Военно Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

37.     On or about November 26, 2007, Aguilera conducted a search of an inmate's accordion file when the inmate returned to the module, in accordance with CCCSO policy. The accordion file was in a tattered condition and its rubber band had detached from the file. Aguilera was unaware that the rubber band was part of the accordion file and confiscated it, believing it to be contraband. When the inmate realized the rubber band was gone, he angrily approached Aguilera asking for his property back. Aguilera realized that it was his mistake and returned the rubber band to the inmate. Later that day, Aguilera was counseled by Dep. Slouse for returning contraband and was not given the opportunity to explain himself.

38.     Later that day, Aguilera confiscated a powdery substance that was stored in an inmate's peanut butter jar. Dep. Slouse returned the peanut butter jar and the powdery substance to the inmate after it was determined that it was only Koolaid powder. Aguilera asked Dep. Slouse why he returned contraband to an inmate, yet counselled Aguilera doing the same thing. Dep. Slouse yelled at Aguilera to never question him again.

39.     On or about November 26, 2007, Aguilera was pulled into Lt. Simpkins' office with Dep. Slouse, Sergeant Steve Evans ("Sgt. Evans"), and Lieutenant Matthew Schuler ("Lt. Schuler"). Lt. Simpkins requested Aguilera sign his training review, an overall evaluation of each phase of training. After reading his training review, Aguilera pointed out several inconsistencies with what was written in his evaluations. The training review portrayed Aguilera as an incompetent guard and an awful person. Lt. Simpkins compared the training review and Aguilera's evaluations and agreed. Lt. Simpkins stated that the training review would be rewritten and Aguilera can sign it later.

40.     Afterwards Lt. Simpkins discussed the review with Aguilera, Lt. Simpkins stated, "your problem is you need to quit being a pussy." Lt. Schuler and Sgt. Evans looked surprised by the comment but did not respond. Sgt. Evans brought up the incident with Aguilera returning rubber band. Sgt. Evans stated that Aguilera should have punched the inmate in the face for getting too close and being aggressive. Sgt. Evans assured Aguilera that if necessary, all Aguilera has to do is push a button and other deputies will help him detain the inmate. Aguilera did not respond to the comment, but was surprised that a lieutenant was condoning that sort of behavior.

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:                                                                    Lawrance A. Bohm, Esq.
                                                                             Zane E. Hilton, Esq.
                                                                             Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1    Aguilera was subsequently excused from the room.

2    41.    On or about December 5, 2007, Nurse Courtney conducted a pill call, where the

3    nurses come onto the module and give the inmates their medication. The nurses are accompanied

4    by deputies who open the doors to each cell for the nurse. During this pill call, Courtney asked

5    Aguilera to open a door for an inmate with an Administrative Segregation classification, a high

6    level classification indicating that the inmate was violent or posed a substantial risk to safety.

7    Aguilera responded that he was unable to open the door because it was against policy. Courtney

8    stated that it was "bullshit" because FTOs open the door when they do not have any trainees

9    present. Aguilera stated that he would not open the door and referred Courtney to Dep. Tillman.

10   Courtney stated to Dep. Tillman, "You guys are so stupid. You know you do it all the time," and

11   left. Dep. Tillman instructed Aguilera to speak with Courtney and explain that their interactions

12   at work must remain professional.

13   42.    On or about December 6, 2007, Deputy Silva told Aguilera that he must have

14   angered the wrong person. Silva stated that that he knew for sure that Aguilera was being given

15   a hard time for a personal reason.

16   43.    On or about January 26, 2008, Aguilera was counseled by Sergeant Sean Yates

17   ("Sgt. Yates") and Sergeant Neil Rafanan ("Sgt. Rafanan"). Sgt. Yates and Sgt. Rafanan brought

18   up an incident where Aguilera instructed an inmate not to have any physical contact with his

19   attorney. Each visit room has a sign indicating that no visitor may have any physical contact with

20   the inmate. Aguilera stated that during training, he was taught to enforce that policy. Sgt. Yates

21   and Sgt. Rafanan ignored Aguilera's explanation. Sgt. Yates and Sgt. Rafanan brought up another

22   incident when Aguilera took a pill out of an inmate's mouth because he was attempting to hold

23   the pill to later resell it. Sgt. Yates and Sgt. Rafanan stated that Aguilera should not have taken

24   the pill out of the inmate's mouth. Sgt. Yates stated that he heard a number of negative things

25   about Aguilera and unfortunately, Aguilera was proving them to be true. Sgt. Yates further

26   reprimanded Aguilera, stating that these types of mistakes needed to stop or he would have to

27   give Aguilera a formal counselling. Sgt. Yates and Sgt. Rafanan were upset that Aguilera was

28   following the rules too closely.

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:                                                                Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

44.    On or about February 28, 2008, Sheriff's Aide Mohammed ("Mohammed") approached Aguilera and advised that he transfer to the graveyard weekend shift. Mohammed stated that he heard of the harassment that Aguilera was going through and suggested that Aguilera can hide from his harassers.

45.    In or around September 2008, Aguilera received notice of an Internal Affairs ("IA") investigation concerning an excessive force allegation by an inmate.

46.    On or about September 11, 2008, Detention Services Worker Sonia approached Aguilera in the Weight Room and informed Aguilera that she was told by Specialist Ernesto Lara that Aguilera will be terminated on September 18, 2008. Aguilera was distraught at learning this information.

47.    On or about September 11, 2008, Aguilera asked Sergeant David Cook ("Sgt. Cook") if it was true that Aguilera was about to get fired. Sgt. Cook denied it and stated that he would know if someone was getting terminated because he was the Shift Sergeant.

48.    On or about September 15, 2008, Aguilera asked Lt. Schuler regarding the status of the IA investigation into the excessive force allegation. Lt. Schuler stated that Aguilera had nothing to worry about.

49.    On or about September 15, 2008, Aguilera complained to Deputy Thomas Trindade ("Dep. Trindade") that he was stressed out because Lt. Schuler did not give him any reassuring answers about the IA investigation or his termination.

50.    Later that night, Aguilera had several alcoholic drinks, which reacted negatively with his medication. He called Dep. Trindade in a depressive state and complained about the stress that CCCSO was putting him through.

51.    On or about September 16, 2008, Commander Joe Carusso ("Cmdr. Carusso") and Sergeant Matt Malone ("Sgt. Malone") approached Aguilera and escorted him to Cmdr. Carusso's office. Cmdr. Carusso and Sgt. Malone ordered Aguilera to tell them who told him he was going to be terminated. Aguilera stated that it was Sonia who heard it from Ernesto. Cmdr. Carusso stated that Aguilera was not getting fired but whoever started the rumor that is stressing him out will be. Cmdr. Carusso noted that IA investigation into the excessive force allegation was far

**Plaintiff's Complaint for Damages and Demand for Jury Trial**                        Lawrance A. Bohm, Esq.
*Aguilera v. Contra Costa County Sheriff's Office*                                            Zane E. Hilton, Esq.
Case No.:                                                                                              Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

from completion.

52.    Cmdr. Carusso further informed Aguilera that Dep. Trindade reported concerns about Aguilera's wellbeing. Cmdr. Carusso stated due to Dep. Trindade's comments, he was concerned that Aguilera was going to harm himself. Aguilera responded that he did not recall ever making statements to that effect added that he sees Dr. Jane Kotun ("Dr. Kotun") and Dr. Matthew Cardova ("Dr. Cardova") at the Veteran's Affairs ("VA") in Martinez to handle his Post-Traumatic Stress Disorder ("PTSD"). Aguilera insisted he was completely capable of performing his duties. Cmdr. Carusso instructed Aguilera to bring him a doctor's note indicating such. Aguilera immediately went to the VA and obtained a doctor's note from Dr. Kotun stating that Aguilera was not a danger to himself and was capable of performing his duties with no restrictions.

53.    Later that day, Aguilera returned to CCCSO with the doctor's note and handed it to Lt. Schuler. Lt. Schuler instructed Aguilera to have a seat in the Sergeants' Office, and they were joined by Captain Newman, Sergeant Moreland, Sgt. Malone, and Dep. Trindade. Cpt. Newman began by stating that Aguilera said he was going to kill himself. Aguilera denied ever making that statement. Dep. Trindade confirmed that he never heard Aguilera say anything to that effect. Cpt. Newman asked Aguilera about his mental state. Aguilera responded that he felt fine, have no problems returning to work, and that he brought a letter from his doctor confirming this. Lt. Schuler responded that he just received Aguilera's termination papers. Lt. Schuler further stated that having a deputy with "these problems" was a liability.

54.    Aguilera implored Cpt. Newman to call Dr. Kotun to confirm that he was fine. Cpt. Newman instructed Lt. Schuler to call Aguilera's doctor. Ignoring Aguilera's repeated statements that he was fine, Cpt. Newman called an ambulance to take Aguilera to the CCC Regional Medical Center. Cpt. Newman warned Aguilera that if he did not leave voluntarily, he would be escorted to the hospital against his will. Aguilera had no choice but to go voluntarily. Cpt. Newman and Lt. Schuler escorted Aguilera through the jail to the ambulance, in front of inmates and colleagues. Aguilera felt humiliated. Under information and belief, Lt. Schuler called Dr. Kotun, who told him that Aguilera's depressive state was likely a negative reaction between

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

alcohol and his medication, but that Aguilera was not a danger to himself and could return to work.

55.     When Aguilera arrived at CCC Regional Medical Center, he was immediately evaluated by a physician. The physician stated that Aguilera did not need to be there and that CCCSO was just "covering their asses." Aguilera was discharged from the hospital within thirty (30) minutes and returned home.

56.     Aguilera drove home immediately after leaving the hospital. When Aguilera arrived at home, Dep. Trindade and Deputy Toni Harris ("Dep. Harris") were waiting for him. Dep. Trindade and Dep. Harris stated that they had been directed to confiscate his service weapon as well as his personal firearms. Aguilera did not want to make the situation more stressful and felt he had no choice but to comply. Dep. Trindade and Dep. Harris conducted a warrantless search of Aguilera's home and confiscated two (2) personal firearms.

57.     On or about September 16, 2008, CCCSO took back Aguilera's termination and placed him on extended medical leave.

58.     On or about September 16, 2008, Cmdr. Carusso instructed Dep. Trindade to write a crime report concerning their attempt to hospitalize Aguilera. The reports are widely available to every CCCSO employee.

59.     From September 16, 2008 to December 15, 2008, as a result of CCCSO's attempt to hospitalize Aguilera, he suffered from dizziness, headaches, insomnia, stress, and constant vomiting. Due to the trauma Aguilera suffered from this incident, Dr. Kotun increased his dosage of anti-anxiety and anti-depression medication. Dr. Cardova and Dr. Kotun additionally treated Aguilera with prolonged exposure therapy.

60.     In or around December 2008, Aguilera obtained a note from Dr. Kotun, stating that he was not a danger to himself, and that he could return to full duty.

61.     On or about December 15, 2008, Aguilera returned to work and was placed on an abbreviated jail field training program. He discovered that his uniform had been stolen from his locker. He informed Sgt. Evans of his missing uniform. Under information and belief, another deputy believed that Aguilera had been terminated, and had taken Aguilera's uniform for his own

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

use.

62.    On or about December 16, 2008, Sgt. Evans told Aguilera that CCCSO is not responsible for a deputy's uniform. Sgt. Evans further stated that Aguilera received a uniform allowance for this purpose.

63.    On or about December 17, 2008, Dep. Slouse instructed Aguilera to sign the FTO book, indicating that Dep. Slouse had reviewed all of the information with him, even though Dep. Slouse had not.

64.    On or about December 19, 2008, Aguilera was graduated from the abbreviated field training program.

65.    On or about December 30, 2008, Aguilera was guarding an inmate who was visited by a family member. In the visiting room, plexiglass separated the inmate from the family member. Each side of the room had a separate light source and switch for that light. During the visit, Sgt. Baldwin called Aguilera to say Cmdr. Carusso told him that the visitor's side light was off and asked Aguilera why that was. Aguilera explained that the visitor's light was not under his control because it was on the other side of the glass. Sgt. Baldwin told Aguilera to turn the light on. Aguilera instructed the visitor to keep the lights on and the visitor complied immediately.

66.    On or about December 30, 2008, an inmate shared with Aguilera that no other deputy is scrutinized as much as he was. The inmate stated that the light in the visitor room stays off all the time because visitors are unaware that they can control it. Aguilera was surprised that even the inmates noticed that he was being targeted by the other officers.

67.    Later that day, Aguilera conducted a formal count of the inmates and called out the number, in accordance with CCCSO policy. Sgt. Baldwin responded sarcastically, "All were in lit rooms, right?" Aguilera felt that Sgt. Baldwin was being condescending and was pointing out Aguilera's previous incident to harass him.

68.    On or about January 6, 2009, Deputy Rose was fourteen (14) minutes late. Sgt. Baldwin chose not to discipline Rose in exchange for a coffee.

///

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

69.     On or about January 14, 2009, Aguilera was called into the Sergeants' Office at 6:30 a.m. Sgt. Baldwin informed Aguilera that he had violated CCCSO policy by signing up for monthly overtime before 7 a.m. Aguilera stated he had never heard of this policy before, but explained that he was expected to be on the module by 7 a.m., making it impossible to sign up for overtime in the morning. Regardless, Aguilera erased his name from the list. However, in doing so, Aguilera noticed that Sgt. Baldwin, Sgt. Malone, Sgt. Kosmicky, Sgt. Cook, Sgt. Oest, Sgt. Yates, and Moreland were already signed up for overtime, before 7 a.m. Furthermore, all of those individuals were Sergeants, who were not supposed to sign up for overtime unless no other deputies were available. Under information and belief, Sergeants were taking overtime shifts even when deputies were available.

70.     On or about January 16, 2009, Aguilera noticed a discrepancy in the number of inmates listed on the computer and his count of the actual inmates in the module. After cross-referencing the names on the list with the actual count, Aguilera determined that an inmate was prematurely listed on the module roster. Aguilera informed Sergeant David Hartmann of this error.

71.     On or about January 14, 2009, Dep. Slouse, Dep. Foreman, and Dep. Rose all arrived late, but were not reprimanded.

72.     On or around January 23, 2009, Aguilera went to Annual Officer Training in Pittsburgh, California. In the Training Officer's Room, which recruits did not have access to, the instructors hung up pictures of the recruits. Under the recruits' names, the instructors had written racial and sexual slurs. Aguilera observed "Taliban" written under Indian recruits, "Norte" under Mexican recruits, and "Green Mile" under Black recruits. Sergeant Kevin Daley and other members of the annual officer training class saw the pictures and nicknames. When Lieutenant Nelson realized that the class could see the pictures, he closed the door to the Training Officers' Room. Under information and belief, Plaintiff alleges that Nelson did not take the pictures down nor reprimand any of the instructors.

///

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

73.    On or about January 27, 2009, Aguilera and other deputies were in the Line Up Room, a conference room where deputies congregate prior to every shift to get updates on the inmates. Aguilera and other deputies were watching a training video regarding the safety chair used to restrain inmates who are a danger to themselves. Sgt. Malone turned down the volume on the video and spoke over the video to give assignments and updates. Aguilera did not receive proper training, but Sgt. Malone instructed him to sign the training roster indicating that he received training. At no point did Aguilera feel comfortable using the safety chair.

74.    On or about January 27, 2009, Aguilera spoke with Sergeant Kenneth Westerman ("Sgt. Westerman") regarding an evaluation Aguilera received from Sgt. Yates. In the evaluation, Sgt. Yates instructed Aguilera not to sit with the nursing staff because they were women, and stated that Aguilera should sit with the deputies because they were men. Sgt. Westerman stated that he was not surprised that the Sergeants were keeping a record of Aguilera's actions in order to justify an eventual termination.

75.    On or about January 30, 2009, Aguilera notified Sgt. Moreland that his grandfather passed away. Sgt. Moreland approved leave for Aguilera from February 2, 2009 to February 5, 2009.

76.    In or around February 2009, Aguilera applied for an open position with Hospital Security.

77.    On or about February 4, 2009, Aguilera provided Lt. Schuler his grandfather's death certificate. Lt. Schuler told Aguilera that the death certificate was not necessary because he believed Aguilera. Lt. Schuler assured Aguilera that he was not out to get Aguilera, but Aguilera was wary of believing him.

78.    On or about February 6, 2009, Aguilera asked Facility Lieutenant Eric Christensen ("Lt. Christensen") about transferring to a different facility. Lt. Christensen said that Aguilera was no longer allowed to transfer because CCCSO was no longer doing intra-bureau transfers.

79.    On or about February 7, 2009, Aguilera sent Sgt. Evans an email concerning bilingual pay, an additional bonus for deputies who have fluency in two (2) or more languages. Deputies had to be approved to take the fluency test administered by HR. Aguilera was unable to

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

17

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1    get approval to take the test since he began at CCCSO.

2        80.    On or February 10, 2009, Dep. Newman told Aguilera that he passed the bilingual

3    exam and Dep. Newman will now receive bilingual pay. Dep. Newman was hired after Aguilera.

4        81.    On or around February 11, 2009, Aguilera was notified by Lieutenant Brown that

5    he was not accepted for Hospital Security.

6        82.    On or about February 11, 2009, an inmate informed Aguilera that he heard rumors

7    from Deputy Flores that Aguilera was fired because he was crazy. Aguilera was distraught and

8    concerned that these rumors had spread to the inmates, and it affected his authority and ability to

9    do his job.

10        83.    On or about February 15, 2009 at approximately 12:00 p.m., Sherriff's Aide

11    Brenda Grant ("Grant"), who was stationed in Central Control, advised Aguilera that D-Module,

12    manned by Deputies Tyler and Rossi, was watching Aguilera on the cameras. Grant stated that

13    she noticed that the cameras in D-Module were focused on Aguilera rather than being trained on

14    the center of the module. This created an unsafe environment as the cameras were not watching

15    out for unlawful or dangerous behavior by the inmates. Typically, the cameras should only be

16    moved by Central Control.

17        84.    At approximately 12:50 p.m., Grant again advised Aguilera that Dep. Tyler and

18    Dep. Rossi were watching him on the cameras.

19        85.    At approximately 1:20 p.m., Deputy James Lang ("Dep. Lang") informed Aguilera

20    that Dep. Rossi and Dep. Tyler were still spying on him with the cameras. Dep. Lang was

21    stationed at D-Module and observed Dep. Rossi and Dep. Tyler doing this.

22        86.    At approximately 3:58 p.m., Aguilera received three (3) calls on the phone in the

23    Deputy Station. Each time Aguilera picked up the phone, the individual on the other end hung up.

24    Aguilera shone his flashlight at the camera and observed the camera moving away. Aguilera

25    called Grant and again advised her of the moving camera. Grant confirmed that that only Central

26    Control and D-Module have the ability to the cameras. Grant further stated that she did not move

27    the camera, so it must be the deputies located in D-Module. Aguilera immediately called Sgt.

28    Rafanan and asked him to speak to D-Module about following Aguilera on the cameras.

Plaintiff's Complaint for Damages and Demand for Jury Trial

*Aguilera v. Contra Costa County Sheriff's Office*

Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

87.     At approximately 4:03 p.m., Aguilera received a call from Sgt. Yates, who yelled at Aguilera to stop harassing Central Control and to stop "being so psycho and paranoid." Sgt. Yates further stated that nobody cared what Aguilera was doing and nobody in D-Module was moving the cameras. Before Aguilera could respond, Sgt. Yates hung up.

88.     At approximately 5:10 p.m., Aguilera was called into the Sergeants Office. Without provocation, Sgt. Yates yelled at Aguilera to stop flashing his flashlight at the camera. Aguilera explained that someone in the jail keeps calling him on the Deputy Station phone and hanging up, and that the camera is moving to watch him. Sgt. Yates brushed off Aguilera's concerns, stating that Aguilera was acting like a "tweaking psycho." Sgt. Yates told Aguilera that the people who did not believe he was "psycho" before would do so now. Sgt. Yates insisted that something was really wrong with Aguilera, and warned Aguilera that he was still on probation and if this behavior continued, it will lead to termination. Sgt. Yates further warned Aguilera that if he pressed the issue and forced Sgt. Yates to write a memo about this incident with the camera, it would be "[Aguilera's] ass in the ringer" and not one of "his guys." Sgt. Yates ordered Aguilera to "just stop" and sent him back to the Module.

89.     At approximately 6:10 p.m., Aguilera spoke to Deputy Mike Jones ("Dep. Jones"), who was stationed in Intake, and explained that he began his shift at 12:00 p.m. and had not yet been relieved for lunch. The deputies in Intake had the responsibility to relieve deputies on the modules for breaks and lunch. Aguilera asked Dep. Jones if he could go for lunch, and Dep. Jones approved the request.

90.     At approximately 7:03 p.m., Aguilera called Dep. Jones again because nobody had arrived to relieve him of his position. Aguilera again asked if he could be relieved because he was hungry. Dep. Jones told Aguilera that he would have to wait, and hung up the phone.

91.     At approximately 7:07 p.m., Sergeant Hartman asked Aguilera if he still required a break. Aguilera stated that he did but he had called Dep. Jones twice but Dep. Jones had indicated that they were busy. Sgt. Hartman told Aguilera that he would try to send someone to relieve Aguilera within the next hour.

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

92.    At approximately 7:15 p.m., Aguilera was finally relieved by Deputy William Lusaretta ("Dep. Lusaretta"). Dep. Lusaretta told Aguilera that the staff was incredibly busy and Aguilera should come back as soon as possible. Aguilera rushed through his lunch and returned at approximately 7:23 p.m. Plaintiff alleges upon information and belief, the staff was not actually busy and Dep. Lusaretta wanted to deny Aguilera his full break.

93.    On or about February 17, 2009, Sgt. Malone and Sgt. Baldwin called Aguilera into the Sergeants' Office to discuss Aguilera's complaint that Rossi was following him on the cameras. Aguilera explained that Dep. Rossi was following him with the cameras and Sgt. Yates referred to Aguilera as a "tweaking psycho." Sgt. Malone and Sgt. Baldwin made it clear that although Aguilera and Dep. Rossi do not like each other, they need to try to get along regardless.

94.    On or about February 17, 2009, Deputy Richard Parr ("Dep. Parr") told Aguilera that in the past, him and another deputy called Aguilera on the Deputy Station phone just to mess around. Dep. Parr further told Aguilera that they stopped after three (3) calls and that he suspected that the other times had to be Dep. Rossi.

95.    On or about February 21, 2009, Aguilera went to the Sherriff's Crabfeed, a fundraising event, with Secretary Karen and Grant. When they arrived, Sgt. Yates approached Karen and asked her why she was with Aguilera. Karen cautiously mentioned that she was friends with Aguilera. Sgt. Yates then instructed Karen to stop interacting with Aguilera because he was "drama" and walked away.

96.    On or about March 2, 2009, Aguilera received active duty military orders for Afghanistan. He was ordered to deploy in support of Operation Enduring Freedom in one (1) week.

97.    On or about April 1, 2009, Aguilera was denied a merit increase in his salary. On the ensuing paperwork, the Cmdr. Carusso indicated that the reason was that Aguilera was on military leave.

98.    On or about July 27, 2009, Aguilera returned to work from military leave.

///

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

99.    On or about October 29, 2009, Aguilera received an evaluation from Sgt. Yates with several negative remarks. Sgt. Yates noted on Aguilera's evaluation that he needed to associate more with deputies rather than the nurses. Sgt. Yates indicated that Aguilera was spoken to twice about interacting with the deputies rather than the female nursing staff.

100.    On or around September 22, 2009, Aguilera complained to Sarah Green, of the Personnel and Finance Division, regarding a pay increase. Aguilera explained that he was denied his pay increase because he did not pass probation on account of being deployed. Aguilera stated that because he has now passed the probationary period, under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") he should now be qualified to receive his pay increase dated back to when he would have passed his probation had he not been deployed. Director of Support Services Barbara Vargen ("Vargen") explained that Aguilera was denied his merit increase because his performance was unsatisfactory and did not respond to his concerns regarding his USERRA rights.

101.    On or about November 3, 2009, Aguilera filed a complaint with the Department of Labor ("DOL") regarding the denial of his pay increase due to his military leave. Through the DOL, Aguilera agreed to sign a settlement agreement with CCCSO to withdraw his complaint if he received his merit increase. Aguilera requested nothing else.

102.    On or about December 10, 2009, Assistant Director of the Veterans' Employment and Training Service of the DOL, Michael Beadle ("Beadle"), emailed CCCSO's Director of Human Resources ("HR"), Ted Cwiek ("Cwiek"), to explain Aguilera's USERRA rights. Beadle further explained that Aguilera agreed to withdraw his USERRA claim if he receives his pay increase.

103.    On or about January 12, 2010, Aguilera and CCCSO signed the settlement agreement, and Aguilera was retroactively given his merit pay increase.

104.    On or about February 1, 2010, Aguilera transferred to the Patrol Division, under the supervision of Sergeant Gary Clark ("Sgt. Clark"), and was placed in the Patrol Field Training Program.

///

Plaintiff's Complaint for Damages and Demand for Jury Trial
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

105.    In or around February 2010, while in the Patrol Field Training Program, Aguilera overheard Deputy Matt Foley ("Dep. Foley") gossiping with Deputy Lahanas and Deputy Tegeler about Aguilera's sexual orientation.

106.    In or around February 2010, Aguilera was notified of an upcoming military assignment with the Marine Corps Officers' Candidate Course, located in Quantico, Virginia. Aguilera informed Dep. Foley of his military assignment. Dep. Foley gave Aguilera a failing grade for the Patrol Field Training Program, and extended Aguilera's probationary period. Dep. Foley stated that he failed Aguilera because when Aguilera returns from military leave, he will likely need a refresher course and the easiest way for CCCSO to do so is by failing him.

107.    In or around June 2010, Aguilera went out on military leave.

108.    On or about June 3, 2010, Aguilera attended the Marine Corps Military Officers' Training.

109.    On or about September 6, 2010, Aguilera returned to work from military leave.

110.    In or around October 2010, Aguilera was made aware by Deputy Emily Ammott ("Dep. Ammott") that Deputy Paul Murphy ("Dep. Murphy") was spreading rumors that he saw Aguilera and Deputy Patchin holding hands. Aguilera was distraught because not only did the incident never happen, he was not open with his sexual orientation at work. Aguilera complained to Sergeant Phillip Wisotski ("Sgt. Wisotski"), asking him to stop the rumors and Aguilera felt that it was harassing. Sgt. Wisotski was receptive to Aguilera's complaint, and spoke to all the deputies spreading and hearing the rumors.

111.    In or around October 2010, during Line Up, Sgt. Wisotski reviewed the harassment policy with the deputies, and instructed the deputies that harassment is not allowed. Lieutenant Gwendolyn Brady ("Lt. Brady") found it odd that a Sergeant was going over harassment policy, and asked Aguilera if everything was okay. Aguilera confided in Lt. Brady about the harassment he was facing. However, Aguilera asked Lt. Brady to let Sgt. Wisotski handle it because he did not want to draw attention to himself. Lt. Brady agreed with Aguilera's request.

112.    On or about January 9, 2011, Deputy Kristy Thomas ("Dep. Thomas") informed Aguilera that she heard rumors at work that Aguilera is dating another man at CCCSO.

Plaintiff's Complaint for Damages and Demand for Jury Trial
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

Aguilera was shocked and asked Dep. Thomas how she heard. Dep. Thomas stated that another deputy approached her to ask if she knew whether the rumors were true.

113.    On or about January 19, 2011, Aguilera received a commendation by Sergeant Scott Haggard ("Haggard") for his excellent handling of a case.

114.    On or about February 4, 2011, Aguilera went out on military leave for Marine Corps Basic Infantry Officers' Course and Specialist School.

115.    On or about October 7, 2011, Aguilera returned to CCCSO from military leave.

116.    On or about April 18, 2012, Aguilera applied for an open position on a tactical team within CCCSO.

117.    On or about July 21, 2012, Aguilera received a commendation from Undersheriff Mike Casten ("Undersheriff Casten") and Sheriff David Livingston ("Sheriff Livingston") for his professionalism and "solid pro-active police work."

118.    On or about September 21, 2012, Aguilera received a commendation from Captain Mark Williams ("Cpt. Williams") for taking the initiative in returning several pieces of stolen property back to their respective owners and liaising with the appropriate local police departments.

119.    On or about September 25, 2012, Aguilera received another commendation from Cpt. Williams and Sergeant David Adams for securing an open garage door for a homeowner who was not present, potentially preventing a crime.

120.    On or about October 9, 2012, Aguilera applied for an open position in the Investigation Division.

121.    In or around October 2012, Aguilera was informed that he was not selected for the position. Sergeant Teddy Anderson ("Sgt. Anderson") informed Aguilera that it was because he was always gone on military leave and it was unfair for his division to be short-staffed due to his absence.

122.    On or about January 8, 2013, Aguilera received a commendation on behalf of Sergeant Chris Simmons ("Sgt. Simmons") for his attentiveness that led to finding important evidence against a suspect.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

123.    On or about March 26, 2013, Aguilera was involved in a vehicle accident while on duty. Aguilera was crossing through an intersection when a UPS semi-truck ran a red light and almost barreled into Aguilera's vehicle. Aguilera noticed the UPS semi-truck at the last minute, but due to his evasive maneuvers, he lost control of his vehicle. Aguilera's vehicle hit the concrete median and flipped over due to the force of the impact. The driver of the UPS truck fled the scene. Following policy, Aguilera and his supervisor, Sergeant Tiffany Van Hook ("Sgt. Van Hook") were required to write a memorandum regarding the crash.

124.    In or around March 2013, Sgt. Van Hook informed Aguilera that Cpt. Simmons and Cpt. Williams were upset that her statement characterized the accident as unpreventable. Sgt. Van Hook stated that Cpt. Simmons and Cpt. Williams pressured her to change her statement to characterize the accident as preventable so that Aguilera could be punished. Sgt. Van Hook further told Aguilera that she refused to change her statement.

125.    In or around March 2013, Cpt. Simmons and Cpt. Williams contacted the California Highway Patrol ("CHP") Officer Todd Owen ("Owen") who was on the scene of the accident. Cpt. Simmons and Cpt. Williams pressured Owen to find that Aguilera's speed was the cause of the accident. Owen refused.

126.    In or around March 2013, Owen contacted Aguilera to inform him about Cpt. Simmons and Cpt. Williams' phone call. Owen stated that Cpt. Simmons and Cpt. Williams seemed to be trying to get Aguilera in trouble.

127.    On or about May 22, 2013, Sgt. Van Hook wrote a memorandum stating that the UPS driver falsely told CHP that he pulled over to assist Aguilera, but told Deputy Hayes that he drove back to the UPS storage hub to report the incident. Sgt. Van Hook additionally pointed out that the UPS driver told CHP that he had a green light but told CCCSO Deputy Hayes that he had stopped at the intersection because of a red light. Sgt. Van Hook concluded that because of the inconsistent statements, she did not believe that the UPS driver was credible. Sgt. Van Hook further stressed that the allegedly unsafe turning movement for which CHP cited Aguilera was a proper evasive maneuver taught by CCCSO in drivers training. Sgt. Van Hook stated that had Aguilera not engaged in this evasive maneuver, the two vehicles would have collided, potentially

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

Plaintiff's Complaint for Damages and Demand for Jury Trial
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

leading to bodily injury to both Aguilera and a civilian.

128.    On or about May 23, 2013, Aguilera again applied for an open position in the Investigations Division.

129.    On or about May 28, 2013, Aguilera received an email from Lieutenant Jon Moreland ("Lt. Moreland") advising him that he would be receiving a Letter of Reprimand for the accident on March 26, 2013. Lt. Moreland indicated the disciplinary action was a result of the preventable vehicle accident.

130.    On or about June 6, 2013, Aguilera received the Letter of Reprimand, dated May 22, 2013, from Cpt. Simmons and Westerman. Cpt. Simmons told Aguilera that if he exercised his right to appeal the Letter of Reprimand, Cpt. Simmons would open an investigation into Aguilera and accuse him of dishonesty regarding the facts of the vehicle accident. Aguilera felt that he had no choice but to accept the Letter of Reprimand.

131.    On or about June 12, 2013, Aguilera received a notification that he would be activated on military orders in less than one (1) week. Aguilera requested to use his banked compensatory time off in order to pack his property and prepare for deployment.

132.    On or about June 13, 2013, Lt. Moreland denied Aguilera's request to use compensatory time off. Aguilera appealed the decision to Cpt. Simmons, who instructed Aguilera to submit the necessary paperwork through the chain of command.

133.    On or about June 14, 2013, Lt. Moreland revised his opinion regarding Aguilera's request and stated that he believed that it was not unreasonable. Lt. Moreland ultimately gave Aguilera the leave he requested.

134.    On or about June 14, 2013, Aguilera went on military leave to be deployed in support of Operation Enduring Freedom and Operation Atlantic Resolve.

135.    On or about June 27, 2013, while on military leave, Aguilera submitted a USERRA complaint with the Department of Labor against CCCSO.

136.    On or about January 8, 2014, while on military leave, Aguilera noticed that he did not accrue holiday hours while he was away on holiday pay. Aguilera complained to Sandra Brown ("Brown"), of the Contracts and Grant Department, and submitted the relevant

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

Memorandum of Understanding to underscore his point. Brown responded that Aguilera was not entitled to holiday compensation or pay if he was not working.

137.    In or about October 2014, Aguilera informed CCCSO that he was returning from his deployment in February 2015. CCCSO instructed Aguilera to report to work at Delta Station on February 28, 2015.

138.    On or about February 28, 2015, Aguilera returned to work from military leave. Aguilera was assigned to an abbreviated Patrol Field Training Program at Delta Station.

139.    On or about February 28, 2015, Aguilera made a request to HR for an opportunity to take the Sergeant promotional exams that he missed while he was on deployment. The promotional exams happened only once a year.

140.    In or around March 2015, Aguilera was denied the opportunity to take the Sergeant promotional exams that he missed.

141.    In or around March 2015, Aguilera filed a USERRA complaint with the Department of Labor for the denial of his military leave.

142.    On or about March 27, 2015, Aguilera applied for an open position in Warrant Services.

143.    On or about March 30, 2015, Aguilera applied for an open position in Investigations.

144.    On or about April 17, 2015, Aguilera discovered flyers posted in the Delta Station Line Up Room. The flyers had the caption, "Signs That Your Kid Might Be Gay," positioned over a picture of a room decorated in Dallas Cowboys merchandise. Sergeant Roque Barrientos ("Sgt. Barrientos") saw the flyers and threw them out. Upon information and belief, Plaintiff alleges Sgt. Barrientos knew who printed out the flyers but did not discipline them.

145.    In or around April 2015, Aguilera contacted the American Civil Liberties Union ("ACLU") for resources, and the Department of Fair Employment and Housing ("DFEH") and Equal Employment Opportunity Commission ("EEOC") to file a complaint.

///

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

26

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

146.    On or about April 24, 2015, Aguilera submitted a formal grievance to CCCSO for the accrued holiday hours he was entitled to during his military leave. Aguilera expected the grievance to be resolved within three (3) weeks, as in previous experience.

147.    On or about May 16, 2015, Chief of Management Services Mary Jane Robb ("Robb") denied Aguilera's overtime request for his court appearance. During his military tour, Aguilera received a subpoena for a high profile domestic violence case. Aguilera was overseas in Germany, but District Attorney Chris Sansoe ("Sansoe") insisted that Aguilera's testimony was integral to the case. Aguilera traveled from Germany to California in order to appear in court. Aguilera provided Robb a letter from Sansoe, confirming Aguilera's appearance in court. Robb disregarded Aguilera's request.

148.    In or around May 2015, Aguilera complained to the union regarding Robb's denial of his overtime pay for his court appearance. Under information and belief, union representatives spoke with Undersheriff Casten, who ultimately approved Aguilera's overtime pay.

149.    On or about May 18, 2015, Aguilera applied for an open position in the Civil Unit.

150.    On or about May 27, 2015, Robb informed Aguilera that his grievance regarding his holiday accruals was denied.

151.    On or about May 29, 2015, Aguilera filed an official appeal to his denied grievance to the Director of Contra Costa County Human Resources.

152.    On or about June 2, 2015, Jeffery Chao ("Chao"), an Investigator for the DOL, requested further information from CCCSO regarding Aguilera's February 28, 2015 complaint that he was denied the opportunity to take his promotional exams.

153.    In or around June 2015, Sgt. Barrientos recommended that Aguilera find another job. Sgt. Barrientos told Aguilera people in the CCCSO hold grudges and it is unfair. Sgt. Barrientos stated that people who complain are seen as problems. Sgt. Barrientos explained that there was nothing he can do about it unless he was promoted to Lieutenant. Aguilera was despondent that there was nothing that could be done.

///

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

154.    On or about June 27, 2015, Aguilera applied for an open position in the Canine Unit. Sergeant Roberts informed Aguilera that he was unlikely to be selected because he is often on military leave. Upon hearing this, Aguilera reached out to his commanding officer, Lieutenant Colonel Vincent Dawson ("Lt. Col. Dawson"), who provided Aguilera with a letter indicating that Aguilera had a three (3) year obligation to his unit in San Diego, and it will not prevent Aguilera from being fully committed to the Canine Unit. Aguilera submitted Lt. Col. Dawson's letter as well as a letter of recommendation from Sgt. Barrientos for consideration. Aguilera was still denied a position with the Canine Unit.

155.    On or about August 5, 2015, Aguilera received a commendation from Lieutenant Kristi Butterfield.

156.    On or about August 7, 2015, Principal Labor Relations Analyst Glynis Hughes ("Hughes") informed Aguilera that his grievance appeal for holiday accruals has been denied. Hughes noted that Aguilera could still appeal the denial and take the issue to mediation with the Deputy Sheriff's Association ("DSA")

157.    In or around August 2015, Aguilera reached out to Sean Welch ("Welch"), a member of the DSA, to discuss what his next steps could be. Welch indicated that he already reached out to the Board, who would be sitting on the panel who would judge the mediation. Welch informed Aguilera that although the Memorandum of Understanding states that Aguilera is entitled to holiday accruals, the Board would likely vote against Aguilera. Welch explained that the Board felt that Aguilera was already somewhat compensated while on military leave and by asking for what he was entitled to was "biting the hand that feeds [him]." Due to this advice, Aguilera ultimately dropped his grievance.

158.    On or about August 11, 2015, Aguilera applied an open position on the C.A.S.E. task force in the Investigations Unit.

159.    On or about August 11, 2015, Aguilera applied for an open position with the Backgrounds Unit.

///

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

160.    On or about August 14, 2015, Chao informed Aguilera that the DOL found that there was evidence that there was a USERRA violation when Aguilera was not allowed to take his promotional exams.

161.    In or around August 2015, in his performance evaluation, Aguilera marked a box indicating that he was a witness to workplace harassment.

162.    On or about August 25, 2015, Captain Dan Hoffman ("Cpt. Hoffman") emailed Aguilera offering to speak with Aguilera about what he knew of any workplace harassment taking place.

163.    On or about August 27, 2015, Aguilera complained to Cpt. Hoffman of two (2) specific incidents of sexual orientation discrimination. Aguilera additionally complained about the racial and sexual slurs he saw posted under recruit names during Annual Officer Training. Cpt. Hoffman implied that Aguilera only complained of workplace harassment because he received a low score on one of his evaluated categories. Aguilera responded that this was not true because when he witnessed this harassment, he contacted the EEOC and ACLU to report the incident. Cpt. Hoffman instructed Aguilera write down his verbal complaint in a memorandum.

164.    On or about August 28, 2015, Aguilera submitted his written complaint to Cpt. Hoffman. Aguilera's written complaint detailed the two (2) instances he verbally discussed with Cpt. Hoffman. The first instance involved the flyers that were posted in the Delta Station Line Up room on April 17, 2015, with the caption, "Early Signs Your Kid Might Be Gay." Aguilera noted that while Sgt. Barrientos crumpled up the flyers and threw them away, he did not condemn the material or address its inappropriateness. Aguilera expressed that he believed the flyers created a hostile work environment.

165.    Aguilera detailed a second incident where now-Sgt. Foley referred to Caitlyn Jenner as "it" or "whatever she is," and referred to her transition as "disgusting." After Foley's statements, the other deputies chimed in with other anti-LGBT statements. In his complaint, Aguilera described the behavior as "completely unacceptable and degrading," and stated his belief that peace officers should treat everyone free of bias. Aguilera further stated that this behavior created a hostile work environment. Aguilera emphasized that in both situations, the Sergeants

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

failed to act, and that this type of hostile and discriminatory language happened constantly. Aguilera routinely heard officers make comments denigrating transgender people or gay men while in the course of his job.

166. In or around September 2015, Aguilera reported to Sgt. Van Hook that now-Lt. Yates posted several sexual and discriminatory comments on Facebook, while indicating his position as Sergeant with CCCSO. This included agreeing with a news article with the headline, "Hawaii Legislators Say Cops Can Get Handjobs and Blowjobs from Hookers"; comments such as "Be careful you might end up making out with a Tranny again"; and telling women to "Get out and get VAJAZZLED. . . Bring on the vagina bling." Aguilera further received a threatening message from a fake Facebook profile, warning Aguilera to "watch his back." Aguilera believed the message to be from Lt. Yates, because he had previously received similar warnings.

167. On or about September 8, 2015, IA began an investigation into Aguilera's allegations against Lt. Yates as well as the racial and sexual slurs used in reference to the recruits. Rather than investigate the substance of Aguilera's concerns, the IA investigator focused on inquiring into why Aguilera was offended and whether he was gay.

168. In or around October 2015, Aguilera told Sheriff Livingston that he was gay and detailed the homophobic comments and discrimination that he has suffered. Aguilera did not want to inform Sheriff Livingston of his sexual orientation out of fear of retaliation, but he felt that he had no choice. However, after telling Sheriff Livingston, Aguilera became distraught.

169. On or about October 19, 2015, Aguilera obtained a doctor's note putting him out on stress leave. Aguilera submitted FMLA paperwork for this medical leave.

170. On or about October 29, 2015, Aguilera returned from stress leave.

171. On or about November 6, 2015, Aguilera was advised by CCCSO HR that his FMLA leave from October 19 to October 29 was accepted.

172. On or about November 12, 2015, Aguilera requested to speak with Sherriff Livingston and scheduled a meeting for December 7, 2015. This meeting ultimately never took place.

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

1   173.    On or about November 13, 2015, Aguilera noticed that the new ARS report writing

2   system uses the term "transvestite" to identify a subject. Aguilera called Technical Services

3   Division, who were the individuals developing the software, to inform them that the term

4   "transvestite" was outdated and inappropriate, and brought supporting documentation.

5   174.    On or about November 17, 2015, Lieutenant Voraheur ("Lt. Voraheur") from the

6   Technical Services Division informs Aguilera that the term "transvestite" is taken from the

7   Department of Justice's ("DOJ") Code Table.

8   175.    On or about November 17, 2015, Aguilera reached out to Kelly Collins-McMurry

9   with the DOJ and Kristi Donahue with the Federal Bureau of Investigation ("FBI") for guidance

10  regarding the code table.

11  176.    On or about November 19, 2015, Collins-McMurry responded to Aguilera,

12  indicating that "transvestite" is not a term used by the DOJ. Furthermore, if the word

13  "transvestite" is used, Collins-McMurry asked Aguilera to inform her immediately so it could be

14  remedied.

15  177.    On or about November 20, 2015, Aguilera forwarded Kristi's response to Lt.

16  Vorhauer and provided copies of past and present code tables to show that the term "transvestite"

17  is not used. Lt. Vorahauer never responded to Aguilera's email. However, within twenty-four (24)

18  hours, the term is taken off of the ARS report writing system. Upon information and belief,

19  Plaintiff alleges that Lt. Voraheur informed other deputies that Aguilera complained.

20  178.    On or about November 26, 2015, now-Sgt. Simmons informed Aguilera that his

21  application for the Richmond Police Department was denied.

22  179.    On or about December 2, 2015, Aguilera submitted a formal grievance to CCCSO

23  regarding unfair Sergeants testing practices. Aguilera stated that when he was taking his Sergeants

24  promotional exam, a large section of the exam was derived from a book assigned to the deputies

25  while he was on military leave. Aguilera pointed out that it was unfair that the book was provided

26  free of charge to some deputies and not others. Aguilera concluded by requesting that all deputies

27  receive full credit for that section of the exam. Other deputies similarly were disadvantaged.

28  ///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

1    180.    On or about December 3, 2015, Aguilera was called into Lieutenant Omary's

2  office with Cpt. Hoffman for a meeting. Cpt. Hoffman verbally reprimanded Aguilera for an email

3  Aguilera sent to the Personnel Department regarding being retaliated against. Aguilera's email

4  had stated that he wanted to use his accumulated military leave time for his weekend drill

5  trainings, but felt retaliated against when CCCSO insisted that he use vacation time.

6    181.    On or about December 3, 2015, as a result of Cpt. Hoffman's verbal reprimand,

7  Aguilera suffered extreme stress. The stress and accompanying physical manifestations

8  exacerbated Aguilera's pervious back injury. Aguilera filed a workers' compensation claim for

9  the back injury and stress.

10    182.    On or about December 7, 2015, Cpt. Hoffman informed Aguilera that Aguilera

11  had left a personal document on the Line Up Room computer. The personal document was a letter

12  Aguilera wrote to Chief Magnus of the City of Richmond, who was an openly gay police chief.

13  In the letter, Aguilera discussed his application with the Richmond Police Department and the

14  anti-LGBT discrimination he currently felt at CCCSO. Cpt. Hoffman stated that to protect

15  Aguilera's privacy, he deleted the letter from the computer. However, Aguilera knew he did not

16  leave a copy of this letter on the Line Up Room computer. Upon information and belief, Aguilera

17  alleges that CCCSO searched through Aguilera's emails to find this letter.

18    183.    On or about December 7, 2015, Aguilera requested a temporary restraining order

19  against Lt. Yates on the foundation of Lt. Yates' threatening Facebook message telling Aguilera

20  to "watch his back." Aguilera's request was granted.

21    184.    On or about December 11, 2015, the DFEH initiated an investigation into

22  Aguilera's complaint of discrimination.

23    185.    On or about December 18, 2015, Aguilera received his score from his Sergeants

24  Promotional Exam and he was ranked tenth on the list of eligible candidates for promotion. Of

25  the individuals that were ultimately promoted to Sergeant, eleven (11) ranked lower than Aguilera

26  and included an individual with a DUI conviction.

27    186.    On or about December 21, 2015, Aguilera emailed Sheriff Livingston and detailed

28  every    instance    of    harassment    and    discrimination    he    experienced    at    CCCSO    so    far.

Plaintiff's Complaint for Damages and Demand for Jury Trial
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

Aguilera expressed his belief that this occurred due to his sexual orientation, military reservist status, and ethnicity.

187.    On or about December 21, 2015, Sheriff Livingston responded to Aguilera that his complaint was delegated to Undersheriff Casten. Sheriff Livingston noted that CCCSO is already in the process of investigating Aguilera's other complaints.

188.    On or about December 21, 2015, Aguilera was directed by Robb to attend a fitness-for-duty evaluation. Robb stated that because Aguilera submitted a claim for stress leave, he had to be evaluated. Aguilera felt that he was being retaliated for his workers' compensation claim because if CCCSO found his stress to be a concern, an evaluation should have come sooner.

189.    On or about December 22, 2015, Aguilera was evaluated by Dr. Gordon Wolf ("Dr. Wolf") for fitness-for-duty, and was placed off of work pending the evaluation results.

190.    On or about December 24, 2015, Aguilera attended a re-hearing for his restraining order against Lt. Yates in the Contra Costa Superior Court. At the hearing, a representative for CCCSO's IA was present and assured the Court that Lt. Yates and Aguilera would no longer work together. The Court denied extending Aguilera's restraining order against Lt. Yates.

191.    On or about January 15, 2016, Dr. Wolf sent CCCSO his completed evaluation. Dr. Wolf found Aguilera to be fit for duty with no conditions. Aguilera was allowed to return to work.

192.    On or about February 4, 2016, Cpt. Hoffman directed Aguilera to attend a Major Incident Critique on February 11, 2016 due to his involvement in a suicide. A Major Incident Critique is used whenever there is a major incident and is used to collect information about proper responses. Every involved officer is interviewed by detectives to ensure that there was no wrongdoing or improper reaction by CCCSO.

193.    On or about February 10, 2016, Executive Assistant to the Sheriff Susan Lyon ("Lyon") notified Aguilera that he was scheduled for a promotional interview with Sheriff Livingston, scheduled for March 10, 2016.

///

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

33

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

194.    On or about February 11, 2016, Aguilera attended the Major Incident Critique, regarding an incident with an individual who committed suicide. Aguilera stated that he attempted to provide basic medical care to the subject who had shot himself, but was overruled by the Sergeant Jason Hayes ("Sgt. Hayes"). Sgt. Hayes instructed Aguilera to leave the subject in the bathtub and wait for American Medical Response ("AMR"). During the Critique, Aguilera stated that AMR did not provide medical care for at least another twenty (20) minutes, and the subject eventually died from his injuries.

195.    Aguilera further complained that while the deputies were sequestered and waiting for their turn to be interviewed in the Critique, now-Sgt. Muse, acting in his capacity as Peer Support Coordinator, verbally reprimanded Aguilera for leaving without informing Sgt. Muse. The Peer Support Coordinators are trained police officer counsellors who provide counselling for officers involved in situations deemed major incidents. Aguilera explained the situation, stating that Cpt. Hoffman told him that he had no obligation to speak with anyone from Peer Support. Aguilera reported that Sgt. Muse ordered him to inform Sgt. Muse if he needed to leave the vicinity at any time. Aguilera said because of Cpt. Hoffman's instruction, he disregarded Sgt. Muse's order and went to the bathroom without notice. When Aguilera returned from the bathroom, Sgt. Muse reprimanded Aguilera for not following his orders. Aguilera further complained that Sgt. Muse was negligent in his duties by not properly identifying which peer support officers were present in their peer support capacities and which ones were acting as Sergeants.

196.    On or about February 18, 2016, Lieutenant Brian Vanderlind ("Lt. Vanderlind") of IA informed Aguilera that the administrative investigation into the events leading to the temporary restraining order against Lt. Yates was complete. Lt. Vanderlind told Aguilera that the investigation clearly established that his allegations against Sgt. Yates were untrue.

197.    On or about February 22, 2016, Cpt. Hoffman rejected Aguilera's letter from the United States Marine Corps indicating that he was on active duty. Cpt. Hoffman stated that because the letter was not satisfactory to satisfy Active Duty Orders, Aguilera was not allowed to use military leave. Cpt. Hoffman stated that Aguilera would be listed as Absent Without Pay for

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

34

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

being absent for his weekend drills on February 17 and February 18, 2016. Aguilera indicated that he had previously provided notice that he had military drills that weekend. Cpt. Hoffman rejected Aguilera' explanation.

198.    On or about February 23, 2016, Aguilera applied for an open position within the Civil Unit.

199.    On or about February 23, 2016, Aguilera submitted a formal grievance for being denied the use of military leave accruals. Aguilera stated that his previous requests to use military leave accruals for weekend military drills was accepted, and he should not have been denied the use of his military leave based on individual interpretation of what constituted Active Duty Orders.

200.    On or about February 26, 2016, Cpt. Hoffman agreed to allow Aguilera to use vacation time for February 17 and February 18, 2016 rather than being absent without pay. However, Aguilera asked to use his military leave time instead.

201.    On or about March 4, 2016, Aguilera was informed by Robb that his grievance regarding his accrued military leave was forwarded to County Counsel, and included it in the claims under investigation.

202.    On or about March 10, 2016, Aguilera met with Sheriff Livingston for his promotional interview. When Aguilera arrived for his interview, Undersheriff Casten was there to conduct the interview with Sheriff Livingston. No other applicant had to interview with both Undersheriff Casten and Sheriff Livingston. During the interview, Sheriff Livingston inquired as to the facts of Aguilera's complaints. Aguilera stated that since his complaints were under investigation, he felt that this line of questioning was improper. However, Aguilera further stated that he was willing to answer any questions if Sheriff Livingston wanted him to. Sheriff Livingston moved onto another line of questioning. Upon information and belief, Plaintiff alleges that all other promotion interviews were conducted in a more informal setting while his was conducted at Sheriff Livingston's desk.

203.    On or about March 11, 2016, CCCSO released the names of deputies who received a promotion to Sergeant. Aguilera was not on the list.

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

204.    On or about March 15, 2016, Aguilera forwarded the list of promoted individuals to Karen Kramer ("Kramer"), a third party investigator that County Counsel had hired to investigate Aguilera's complaints.

205.    On or about April 29, 2016, Captain John Lowden ("Cpt. Lowden") contacted Aguilera regarding an open position in his division in Los Vaqueros. This opening is in an isolated location and is generally an unwanted selection. Out of all of Aguilera's applications, this was his only offer. Aguilera felt that he was being alienated.

206.    On or about May 10, 2016, Lieutenant Jason P. Haynes, the Valley Station Commander, served Aguilera with a Notice of an Administrative Inquiry by IA. The allegations concerned incidents of Equality of Enforcement, Unbecoming Conduct, and Personal Appearance. The allegations spawned from Aguilera responding to a call involving a potential domestic disturbance situation. Ultimately, IA found that the allegations against Aguilera were unsubstantiated.

207.    On or about May 13, 2016, Aguilera applied for an open position for Academy Instructor.

208.    On or about May 13, 2016, Aguilera went out on stress leave and submitted paperwork for FMLA leave. Aguilera submitted a doctor's note that was substantially similar to previous notes he submitted before and accepted by CCCSO.

209.    On or about May 16, 2016, Aguilera applied for an open position in the Investigations Unit.

210.    On or about May 18, 2016, Aguilera returned to work from stress leave.

211.    On or about June 2, 2016, Aguilera is advised by CCCSO HR that his FMLA leave for May 13 to May 18 was denied. CCCSO HR stated that Aguilera's doctor's certificate did not meet their qualification

212.    On or about July 6, 2016, Aguilera was informed by IA that the allegations against him on May 10, 2016 were all closed as unfounded.

///

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

213.    On or about July 7, 2016, Kramer informed Aguilera that she was still conducting interviews into the allegations that Aguilera made against other department members. Kramer did not elaborate as to which allegations she was investigating.

214.    On or about July 15, 2016, Aguilera applied for an FTO opening.

215.    On or about July 25, 2016, Aguilera submitted to CCCSO HR a FMLA certification filled out by a DOL provider. CCCSO advised Aguilera that his FMLA leave for May 13, 2016 to May 18, 2016 was approved.

216.    On or about August 4, 2016, Aguilera received a subpoena for a coroner's inquest for the suicide that was investigated in the Major Incident Critique.

217.    On or about August 18, 2016, Aguilera informed Kramer of allegations against Sergeant Marveth Haley ("Sgt. Haley"). Aguilera described an incident where he was scheduled at Baypoint every day, rather than two (2) days at Baypoint and two (2) days in other areas, like other deputies. Aguilera told Kramer that Sgt. Haley stated that he did so because Aguilera spoke Spanish, and Aguilera's schedule can change after "Donald Trump gets elected he is going to build the wall, they will all go back to Mexico." Aguilera complained to Kramer that he felt that Sgt. Haley targeted him because he is Mexican. Kramer advised Aguilera that IA would investigate the incident with Haley because CCCSO instructed Kramer not to investigate. IA never interviewed Aguilera and the issue was never investigated.

218.    On or about August 18, 2016, Aguilera applied for an open position with NCRIC. This open position requires a secret security clearance, which Aguilera already had. However, Aguilera was denied the position. Lieutenant Johnson informed Aguilera that he was the top candidate but "the powers-that-be overruled his decision." Upon information and belief, Plaintiff alleges that the individual selected did not have the necessary clearance yet and had less experience than Aguilera.

219.    On or about August 19, 2016, Aguilera pulled over an individual who was suspected of drunk driving. Procedure dictated that because Aguilera was not trained to do field sobriety tests, he called California Highway Patrol ("CHP") to send an officer. Aguilera waited one (1) hour and the CHP officer had not yet arrived. He was concerned that due to the length of

**Plaintiff's Complaint for Damages and Demand for Jury Trial**          Lawrance A. Bohm, Esq.
*Aguilera v. Contra Costa County Sheriff's Office*                              Zane E. Hilton, Esq.
Case No.:                                                                      Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1    time he had detained the alleged drunk driver without conducting a field sobriety test, it was

2    becoming an unlawful detainer. During this time, Aguilera was sending text messages to Omar,

3    an individual he met while on a law enforcement equality panel and knew only as having worked

4    at the CHP.

5        220.    Approximately one (1) and a half hours later, a CHP officer arrived to conduct a

6    field sobriety test. Aguilera disagreed with CHP officers regarding a DUI turnover. When the

7    CHP Officer arrived, Aguilera briefly mentioned that he had been sending text messages to Omar.

8    The CHP Officer accused Aguilera of getting him in trouble. Aguilera was confused but said that

9    he was doing nothing of the sort. The CHP Officer took custody of the drunk driver and left.

10       221.    On or about August 19, 2016, Aguilera was troubled by the CHP Officer's reaction

11   and asked Omar what position he held at CHP. Omar advised Aguilera that he was the Assistant

12   Chief of CHP. Aguilera apologized for the messages he sent about the drunk driving transfer and

13   insisted that he was not meaning to get anybody in trouble. Omar stated that he understood and

14   would not expect Aguilera to go behind an officer's back to get them into trouble.

15       222.    On or about August 22, 2016, Aguilera requested a copy of the Fitness-For-Duty

16   examination he was forced to complete.

17       223.    On or about August 23, 2016, Aguilera was served with an IA notice for

18   untruthfulness and cooperation with outside agencies. This IA notice had to do with Aguilera's

19   interaction with the CHP officer on August 19, 2016 and his text conversation with Omar. Upon

20   reading this IA notice, Aguilera suffered a panic attack.

21       224.    From August 23, 2016 to August 24, 2016, Aguilera suffered from sleeplessness,

22   depression, frequent vomiting, and severe headaches. Aguilera sought medical care from Dr.

23   Kotun and Dr. Cardova, who instructed Aguilera to follow up the next day. Aguilera advised

24   Sergeant Daniels that he would be taking the next day off for sickness.

25       225.    On or about August 24, 2016 at 6 a.m., Aguilera attended a medical appointment

26   and was placed out on stress leave until September 19, 2016. Aguilera informed Haley

27   immediately and provided a doctor's certificate. Haley acknowledged receiving the doctor's

28   certificate.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**                    Lawrance A. Bohm, Esq.
*Aguilera v. Contra Costa County Sheriff's Office*                                Zane E. Hilton, Esq.
Case No.:                                                                          Tracy C. Law, Esq.

226.    On or about August 24, 2016 at 2:10 p.m., Aguilera was notified by HR that his doctor's certificate again does not meet CCCSO's eligibility requirements. Aguilera was denied his FMLA leave from August 24, 2016 to September 19, 2016.

227.    On or about August 26, 2016, while Aguilera was on stress leave, Sgt. Muse and Lt. Vanderlin unexpectedly arrived at his home and informed him of a new IA allegation for insubordination for allegedly speaking to a potential witness in an initial IA incident. Sgt. Muse and Lt. Vanderlin acknowledged that Aguilera was out on leave and told him that the IA interview will happen when he returned from leave. Sgt. Muse and Lt. Vanderlin left shortly. As a result of Sgt. Muse and Lt. Vanderlin's unannounced visit, Aguilera suffered a severe anxiety attack, severe headaches, severe depression, and vomiting as a result of the stress. The visit caused Aguilera to spiral into extreme emotional distress, and he called a VA crisis hotline for help.

228.    On or about August 28, 2016, while on stress leave, Aguilera's previous back injury began to flare up and cause lower back pain. Aguilera made an appointment with the chiropractor to treat his back.

229.    On or about September 1, 2016, while on stress leave, Aguilera went to his chiropractor appointment for his back injury. The chiropractor told Aguilera that his back is too inflamed to treat and that he would have to wait until the inflammation subsided. As a result, a VA Nurse Practitioner placed Aguilera on temporary modified duty, which kept him doing administrative tasks so as not to put stress on his back.

230.    On or about September 2, 2016, while on stress leave, Aguilera requested a copy of Kramers' investigation from Robb.

231.    On or about September 6, 2016, while on stress leave, Aguilera received a letter from Deputy County Counsel Christina J. Ro-Connolly ("Ro-Connolly") advising him that Kramers' independent investigation was over.

232.    On or about September 8, 2016, while on stress leave, Aguilera received a letter from Ro-Connolly stating that Kramer could not find any merit to Aguilera's complaints of harassment and discrimination.

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

233.    On or about September 19, 2016, Aguilera returned to work from stress leave.

234.    On or about September 26, 2016, Aguilera requested his personnel file after not receiving offers by the Richmond Police Department or the Concord Police Department.

235.    In or around September 2016, after seeing several inaccurate documents in his personnel file, Aguilera requested that those documents be purged. These documents included a document stating that Aguilera had been terminated upon the end of probation, another document denying his military pay increase due to unsatisfactory conduct, and another document forcing Aguilera to use his vacation leave rather than military leave.

236.    On or about October 6, 2016, Aguilera emailed HR Representative Robyn Hanson ("Hanson") to ask why his previous doctor's note was insufficient even though his other doctor's notes were substantially similar. Hanson did not respond

237.    In or around October 2016, Aguilera filed a complaint with the DOL regarding CCCSO's failure to accept his doctor's certification for FMLA Leave.

238.    On or about October 11, 2016, Hanson told Aguilera that his request to purge documents was still being reviewed.

239.    On or about October 28, 2016, Sheriff Livingston announced more sergeant promotions. Aguilera was not selected for promotion.

240.    On or about November 7, 2016, Aguilera received a Letter of Reprimand from Assistant Sheriff Elise Warren ("Warren") for the incident involving a CHP officer on August 19, 2016.

241.    On or about November 16, 2016, Dr. Bates conducted a QME on Aguilera for his workers' compensation claim. Dr. Bates concluded that Aguilera rated 50% disabled for traumatic experiences that he experienced as a Deputy Sheriff and an additional 5% disabled due to "personnel issues."

242.    In or around December 2016, Aguilera went out on workers' compensation leave for his lingering back issue.

243.    On or about December 21, 2016, while on leave, Aguilera received a Right-to-Sue letter from the DFEH.

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

244.    On or about January 19, 2017, while on leave, Aguilera received a dismissal and notice of rights letter from the DFEH.

245.    On or about January 26, 2017, while on leave, Aguilera was advised that his request to purge negative documents from his personnel file was still being reviewed. Aguilera stated that it was well past the thirty (30) days that CCCSO was supposed to respond within.

246.    On or about January 26, 2017, while on leave, Robb responded to Aguilera's request to purge negative and incorrect documents. Robb removed only two (2) of the six (6) documents.

247.    On or about March 3, 2017, while on leave, Sheriff Livingston informed Aguilera that his appeal for his Letter of Reprimand was denied.

248.    On or about April 12, 2017, while on leave, Aguilera received a redacted copy of the DOL's FMLA violation investigation. The investigator had noted that several employer notice violations had been uncovered in the investigation.

249.    On or about April 13, 2017, while on leave, Aguilera received a right to sue letter from the Department of Labor.

250.    On or about May 9, 2017, while on leave, Aguilera received a response that his appeal of his Letter of Reprimand was denied.

251.    On or about June 6, 2017, while on leave, Aguilera received an email regarding his promotional interview with Sheriff Livingston.

252.    On or about July 10, 2017, while on leave, Aguilera received notice of an updated interview date and time for his interview with Sheriff Livingston.

253.    On or about July 11, 2017, while on leave, Aguilera attended his promotional interview with Sheriff Livingston and Undersheriff Casten was again present. Sheriff Livingston again asked Aguilera about his allegations of discrimination and harassment. Sheriff Livingston told Aguilera that he was playing the victim. Aguilera responded that now-Lt. Van Hook warned him that his superiors will hold these complaints against him. Sheriff Livingston asked Aguilera if he believed that. Aguilera responded that he did. Aguilera further described an occasion when Sergeant Daniels apologized for the way that CCCSO treated him. Sheriff Livingston only

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

1    acknowledged Aguilera's statements but did not comment on them. Aguilera was dismissed from
2    the interview.

3        254.    On or about July 19, 2017, Sheriff Livingston announced promotions. Aguilera
4    was not promoted.

5        255.    In or around November 2017, Aguilera applied for and was granted state disability
6    pay.

7        256.    As of the filing of this complaint, Aguilera remains on leave for his back injury.

8    **<u>FIRST CAUSE OF ACTION</u>**

9    **Violation of the Uniformed Services Employment and Reemployment Rights Act**
10   **("USERRA")**

11       257.    The allegations set forth in this complaint are hereby re-alleged and incorporated
12   by reference.

13       258.    Plaintiff asserts this cause of action against Defendant Contra Costa County
14   Sheriff's Office.

15       259.    At all relevant times, Plaintiff was an employee of Defendant.

16       260.    At all relevant times, Plaintiff was serving in the Marine Corps Reserves.
17   Plaintiff's uniformed service included being recalled to active duty due to a presidential recall,
18   overseas deployments, and weekend reservist drills.

19       261.    At all times relevant to this matter, the Uniformed Services Employment and
20   Reemployment Rights Act ("USERRA") was in full force and effect and binding on Defendant.
21   38 United States Code section 4312(a) reads, "[A]ny person whose absence is necessitated by
22   reason of service in the uniformed services shall be entitled to the reemployment rights and
23   benefits and other employment benefits of this chapter." 38 United States Code section 4311(b)(1)
24   and (4) reads, "An employer may not discriminate in employment action or take any adverse
25   employment action against any person because such person has taken an action to enforce a
26   protection afforded any person under this chapter . . . or has exercised a right provided for in this
27   chapter."
28   ///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

262.    Defendant was at all material times an "employer" within the meaning of 38 U.S.C. § 4303(3), and, as such, barred from unlawful activity as set forth in 38 United States Code sections 4311 and 4312.

263.    As set forth above, Defendant's violated Plaintiff's USERRA rights by failing to promote him due to his military leave, needlessly extending his probationary period, failing to select him for positions he was qualified for due to the potential of deployment, refusing to allow him to accrue leave hours while on military leave, threatening an IA investigation if he appealed a denied grievance for accrued hours, unfairly disciplining him, and creating an overall hostile work environment.

264.    Plaintiff's uniformed service was a motivating reason for Defendant's refusal to promote him, needless extension of his probationary period, refusal to select him for positions for which he was qualified, denial of accrued leave hours while on military leave, threat of IA investigations if he exercised his right to appeal a denied grievance, unfair discipline, and creation of the overall hostile terms and conditions of employment—resulting in a forced disability leave.

265.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

266.    As an actual and proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks relief as defined by 38 United States Code sections 4323(d)(1)(B) and (C), including lost wages, loss of benefits, and any such other relief that this Court deems proper.

267.    As an actual and proximate result of Defendant's willful and intentional discrimination, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

268.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff has suffered physical injury. Plaintiff experienced nausea, insomnia, restless sleep, fatigue, and severe headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

///

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

43

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

269.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other non-economic damages. Plaintiff experienced embarrassment, humiliation, stress, low self-esteem, depression, anxiety, and suicidal thoughts. Plaintiff claims general damages for mental distress and other non-economic damages in an amount according to proof at time of trial.

## SECOND CAUSE OF ACTION

### Discrimination Based on Military and Veteran Status; Gov. Code § 12940, subd. (a)

270.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

271.    Plaintiff asserts this cause of action against Defendant Contra Costa County Sheriff's Office.

272.    At all relevant times, Plaintiff was an employee of Defendant.

273.    At all times relevant to this matter, the Fair Employment and Housing Act and Government Code section 12940 was in full force and effect and binding on Defendant. Government Code section 12940, subdivision (a), reads, "It is an unlawful employment practice…[f]or an employer, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

274.    Defendant was at all material times an "employer" within the meaning of Government Code section 12926, subdivision (c), and, as such, barred from illegal discrimination as set forth in Government Code section 12940, subdivision (a).

275.    As set forth above, Defendant's unlawfully discriminated against Plaintiff's military and veteran status by refusing to promote him, refusing to allow him to transfer, refusing to allow him to accrue holiday time while on military leave, needlessly extending his probationary

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

1  period, unfairly disciplining Plaintiff, explicit hostility towards Plaintiff's military service, refusal

2  to select Plaintiff for open positions, and creating the overall hostile terms and conditions of

3  employment. Defendant's condoned an environment that, among other things, tolerated and

4  encouraged discrimination based on Plaintiff's military and veteran status that materially and

5  negatively impacted the terms and conditions of Plaintiff's employment. Defendant's statements

6  and conduct complained of herein violated Government Code section 12940, subdivision (a), and

7  the California Code of Regulations, title 2, sections 11019 and 11020.

8  276.   Plaintiff's military and veteran status was a substantial motivating reason for

9  Defendant's refusal to promote him, refusal to allow him to transfer, refusal to allow him to accrue

10  holiday time while on military leave, and creation of the overall hostile terms and conditions of

11  employment.

12  277.   Defendant's conduct was a substantial factor in causing Plaintiff's harm.

13  278.   As an actual and proximate result of the aforementioned violations, Plaintiff has

14  been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of

15  this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by

16  Government Code section 12926, subdivision (a), including back pay, reimbursement of out of

17  pocket expenses and any such other relief that this Court deems proper.

18  279.   As an actual and proximate result of Defendant's willful and intentional

19  discrimination, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

20  280.   As an actual and proximate result of Defendant's aforementioned acts, Plaintiff

21  has suffered physical injury. Plaintiff experienced nausea, insomnia, restless sleep, fatigue, and

22  severe headaches. Plaintiff claims general damages for physical injury in an amount according to

23  proof at time of trial.

24  281.   As an actual and proximate result of Defendant's aforementioned acts, Plaintiff

25  also suffered mental upset and other non-economic damages. Plaintiff experienced

26  embarrassment, humiliation, stress, low self-esteem, depression, anxiety, and suicidal thoughts.

27  Plaintiff claims general damages for mental distress and other non-economic damages in an

28  amount according to proof at time of trial.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

## THIRD CAUSE OF ACTION

### Discrimination Based on Sexual Orientation; Gov. Code § 12940, subd. (a)

282.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

283.    Plaintiff asserts this cause of action against Defendant Contra Costa County Sheriff's Office.

284.    At all relevant times, Plaintiff was an employee of Defendant.

285.    At all times relevant to this matter, the Fair Employment and Housing Act and Government Code section 12940 was in full force and effect and binding on Defendant. Government Code section 12940, subdivision (a), reads, "It is an unlawful employment practice…[f]or an employer, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

286.    Defendant was at all material times an "employer" within the meaning of Government Code section 12926, subdivision (c), and, as such, barred from illegal discrimination as set forth in Government Code section 12940, subdivision (a).

287.    As set forth above, Defendant's unlawfully discriminated against Plaintiff's sexual orientation by making derogatory comments about other LGBT individuals, spreading, malicious rumors regarding his personal life, and creating the overall hostile terms and conditions of employment. Defendant's condoned an environment that, among other things, tolerated and encouraged discrimination based on sexual orientation that materially and negatively impacted the terms and conditions of Plaintiff's employment. Defendant's statements and conduct complained of herein violated Government Code section 12940, subdivision (a), and the California Code of Regulations, title 2, sections 11019 and 11020.

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:                                                          Lawrance A. Bohm, Esq.
                                                                    Zane E. Hilton, Esq.
                                                                    Tracy C. Law, Esq.

288.    Plaintiff's sexual orientation was a substantial motivating reason for Defendant's derogatory comments about other LGBT individuals, malicious rumors regarding his personal life, and creation of the overall hostile work environment.

289.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

290.    As an actual and proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including back pay, reimbursement of out of pocket expenses and any such other relief that this Court deems proper.

291.    As an actual and proximate result of Defendant's willful and intentional discrimination, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

292.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff has suffered physical injury. Plaintiff experienced nausea, insomnia, restless sleep, fatigue, and severe headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

293.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other non-economic damages. Plaintiff experienced embarrassment, humiliation, stress, low self-esteem, depression, anxiety, and suicidal thoughts. Plaintiff claims general damages for mental distress and other non-economic damages in an amount according to proof at time of trial.

## **FOURTH CAUSE OF ACTION**

### **Disability Discrimination: Gov. Code, § 12940, subd. (a)**

294.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

294.    This cause of action is asserted against Defendant Contra Costa County Sheriff's Office.

295.    At all relevant times, Plaintiff was an employee of Defendant.

///

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

Plaintiff's Complaint for Damages and Demand for Jury Trial
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

296.    At all times relevant to this matter, the Fair Employment and Housing Act and Government Code section 12940 were in full force and effect and binding on Defendant(s). Government Code section 12940, subdivision (a), reads: "It is an unlawful employment practice... [f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

297.    At all times relevant to this matter, Plaintiff suffered from a "mental disability" as defined by Government Code section 12926, subdivision (j), and California Code of Regulations, title 2, section 11065, subdivision (d)(1), and/or a "perceived disability" as defined by Government Code section 12926, subdivision (j), and California Code of Regulations, title 2, section 11065, subdivision (d)(5), and/or a "perceived potential disability" as defined by Government Code section 12926, subdivision (j), and California Code of Regulations, title 2, section 11065, subdivision (d)(6), and/or a "physical disability" as defined by Government Code section 12926, subdivision (m), and California Code of Regulations, title 2, section 11065, subdivision (d)(2). In spite of his disabilities, Plaintiff was able to perform the essential functions of his position as defined by Government Code section 12926, subdivision (f), and California Code of Regulations, title 2, section 11065, subdivision (e), and was otherwise able to perform his job had Defendant provided the reasonable accommodation required by Government Code section 12926, subdivision (p), and California Code of Regulations, title 2, section 11068, subdivision (a).

298.    Defendant's conduct violated Government Code section 12940, subdivision (a), consistent with California Code of Regulations, title 2, section 11066. Specifically, Defendant knew of Plaintiff's physical and mental disabilities that limited major life activities. In spite of his disabilities, Plaintiff was able to perform the essential functions of his position with reasonable

B OHM L AW G ROUP, I NC.
4600 N ORTHGATE B OULEVARD, S UITE 210
S ACRAMENTO, C ALIFORNIA 95834

48

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

1    accommodation.

2    299.    As set forth above, Defendant's unlawfully discriminated against Plaintiff because

3    of his disabilities by attempting to terminate him, attempting to involuntarily hospitalize him,

4    refusing to accept his doctors' notes, denying his FMLA leave, refusing to promote him, unfairly

5    disciplining him, using derogatory language in reference to his disability, and creating the overall

6    hostile terms and conditions of employment. Defendant's condoned an environment that, among

7    other things, tolerated and encouraged discrimination based on disability that materially and

8    negatively impacted the terms and conditions of Plaintiff's employment. Defendant's statements

9    and conduct complained of herein violated Government Code section 12940, subdivision (a), and

10   the California Code of Regulations, title 2, sections 11019 and 11020.

11   300.    Plaintiff's disabilities were a substantial motivating reason for Defendant's

12   decision to attempt to terminate him, attempt to involuntarily hospitalize him, refuse to accept his

13   doctors' notes, deny his FMLA leave, deny his promotion, unfairly discipline him, use derogatory

14   language regarding his disability, and create the overall hostile terms and conditions of

15   employment.

16   301.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

17   302.    As an actual and proximate result of the aforementioned violations, Plaintiff has

18   been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of

19   this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by

20   Government Code section 12926, subdivision (a), including back pay, reimbursement of out of

21   pocket expenses and any such other relief that this Court deems proper.

22   303.    As an actual and proximate result of Defendant's willful and intentional

23   discrimination, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

24   304.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff

25   has suffered physical injury. Plaintiff experienced nausea, insomnia, restless sleep, fatigue, and

26   severe headaches. Plaintiff claims general damages for physical injury in an amount according to

27   proof at time of trial.

28   ///

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

---

49

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:                                                                    Lawrance A. Bohm, Esq.
                                                                             Zane E. Hilton, Esq.
                                                                             Tracy C. Law, Esq.

305.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset, and other non-economic damages. Plaintiff experienced embarrassment, humiliation, stress, low self-esteem, depression, anxiety, and suicidal thoughts. Plaintiff claims general damages for mental distress and other non-economic damages in an amount according to proof at time of trial.

## FIFTH CAUSE OF ACTION

### Hostile Work Environment Harassment Based on Sexual Orientation;

### Gov. Code § 12940, subd. (j)

306.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

307.    Plaintiff asserts this cause of action against Defendant Contra Costa County Sheriff's Office.

308.    At all relevant times, Plaintiff was an employee of Defendant.

309.    At all times relevant to this matter, the Fair Employment and Housing Act and Government Code section 12940 was in full force and effect and binding on Defendant. Government Code section 12940, subdivision (j), reads, "It is an unlawful employment practice…[f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to harass an employee, an applicant, or a person providing services pursuant to a contract."

310.    Defendant was at all material times an "employer" within the meaning of Government Code section 12926, subdivision (c), and, as such, barred from illegal harassment as set forth in Government Code section 12940, subdivision (j).

311.    Plaintiff was subjected to unwanted harassing conduct because of his sexual orientation, which included derogatory comments about other LGBT individuals, and malicious rumors regarding his personal life. These deplorable acts were persistent throughout Plaintiff's

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

employment with Defendant. This harassing conduct was conducted by Defendant and its managing agents and employees, who created an environment that, among other things, tolerated and encouraged harassment against Plaintiff that impacted the terms and conditions of Plaintiff's employment. The statements and conduct on the part of Defendant and its managing agents and employees complained of herein represent a violation of Government Code section 12940, subsection (j), and the California Code of Regulations, title 2, sections 11019 and 11020.

312.   The harassing conduct was severe and/or pervasive.

313.   A reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

314.   The conduct of Defendant and its managing agents and employees were a substantial factor in causing Plaintiff's harm.

315.   As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seek "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subsection (a), including back pay, reimbursement of out-of-pocket expenses and any such other relief that this Court deems proper.

316.   As an actual and proximate result of Defendant's willful and intentional harassment, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

317.   As an actual and proximate result of Defendant's aforementioned acts, Plaintiff has suffered physical injury. Plaintiff experienced nausea, insomnia, restless sleep, fatigue, and severe headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

318.   As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other non-economic damages. Plaintiff experienced embarrassment, humiliation, stress, low self-esteem, depression, anxiety, and suicidal thoughts. Plaintiff claims general damages for mental distress and other non-economic damages in an amount according to proof at time of trial.

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

51

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

**SIXTH CAUSE OF ACTION**

**Hostile Work Environment Harassment Based On Disability;**

**Gov. Code § 12940, subd. (j)**

319.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

320.    This cause of action is asserted against Defendant Contra Costa County's Sheriff's Office.

321.    At all relevant times, Plaintiff was an employee of Defendant.

322.    At all times relevant to this matter, the Fair Employment and Housing Act and Government Code section 12940 was in full force and effect and binding on Defendant. Government Code section 12940, subdivision (j), reads, "It is an unlawful employment practice . . . [f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to harass an employee, an applicant, or a person providing services pursuant to a contract."

323.    Defendant was at all material times an "employer" within the meaning of Government Code section 12926, subdivision (c), and, as such, barred from illegal harassment as set forth in Government Code section 12940, subdivision (j).

324.    Plaintiff was subjected to unwanted harassing conduct because of his disabilities by, among other things, references to Plaintiff as a "tweaking psycho," spreading malicious rumors of Plaintiff's mental state, and intentionally interfering with his duties. These deplorable acts were persistent throughout Plaintiff's employment with Defendant. This harassing conduct was conducted by Defendant and its managing agents and employees, who created an environment that, among other things, tolerated and encouraged harassment against Plaintiff that impacted the terms and conditions of Plaintiff's employment. The statements and conduct on the part of Defendant and its managing agents and employees complained of herein represent a

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:                                                                    Lawrance A. Bohm, Esq.
                                                                            Zane E. Hilton, Esq.
                                                                            Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1 violation of Government Code section 12940, subsection (j), and the California Code of

2 Regulations, title 2, sections 11019 and 11020.

3     325.    The harassing conduct was severe and/or pervasive.

4     326.    A reasonable person in Plaintiff's circumstances would have considered the work

5 environment to be hostile or abusive.

6     327.    The conduct of Defendant and its managing agents and employees were a

7 substantial factor in causing Plaintiff's harm.

8     328.    As an actual and proximate result of the aforementioned violations, Plaintiff has

9 been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of

10 this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by

11 Government Code section 12926, subdivision (a), including back pay, reimbursement of out of

12 pocket expenses and any such other relief that this Court deems proper.

13     329.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff

14 suffered physical injury. Plaintiff experienced weight loss, poor appetite, nausea, depression,

15 insomnia, early awakening, restless sleep, fatigue, anxiety, and loss of concentration. Plaintiff

16 claims general damages for physical injury in an amount according to proof at time of trial.

17     330.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff

18 also suffered mental upset and other emotional distress. Plaintiff claims general damages for

19 mental distress in an amount according to proof at time of trial.

20 **SEVENTH CAUSE OF ACTION**

21 **Hostile Work Environment Harassment Based On Race; Gov. Code § 12940, subd. (j)**

22     331.    The allegations set forth in this complaint are hereby re-alleged and incorporated

23 by reference.

24     332.    Plaintiff asserts this cause of action against Defendant Contra Costa County

25 Sheriff's Office.

26     333.    At all relevant times, Plaintiff was an employee of Defendant.

27 ///

28 ///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

334.    At all times relevant to this matter, the Fair Employment and Housing Act and California Government Code Section 12940 were in full force and effect and binding on Defendants. Plaintiff was subjected to unwanted harassing conduct because of his race. This harassing conduct was conducted by Plaintiff's supervisors and peers who created an environment that among other things, tolerated and encouraged racially insensitive and derogatory language in reference to Plaintiff as well as his colleagues. The statements and conduct on the part of Defendant complained of herein represent a violation of California Government Code Section 12940(a).

335.    Plaintiff was subjected to unwanted harassing conduct because of his race by, among other things, derogatory comments referencing Plaintiff and other employees' race. These deplorable acts were persistent throughout Plaintiff's employment with Defendant. This harassing conduct was conducted by Defendant and its managing agents and employees, who created an environment that, among other things, tolerated and encouraged harassment against Plaintiff that impacted the terms and conditions of Plaintiff's employment. The statements and conduct on the part of Defendant and its managing agents and employees complained of herein represent a violation of Government Code section 12940, subsection (j), and the California Code of Regulations, title 2, sections 11019 and 11020.

336.    As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including back pay, reimbursement of out of pocket expenses, expungement of records and any such other relief that this Court deems proper.

337.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff has suffered physical injury. Plaintiff experienced nausea, insomnia, restless sleep, fatigue, and severe headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

///

///

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

338. As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other non-economic damages. Plaintiff experienced embarrassment, humiliation, stress, low self-esteem, depression, anxiety, and suicidal thoughts. Plaintiff claims general damages for mental distress and other non-economic damages in an amount according to proof at time of trial.

## SEVENTH CAUSE OF ACTION

### Retaliation: Gov. Code, § 12940, subd. (h)

339. The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

340. This cause of action is asserted against Defendant Contra Costa County Sheriff's Office.

341. At all relevant times, Plaintiff was an employee of Defendant.

342. At all times relevant to this action, it was unlawful under Government Code section 12940, subdivision (h), and California Code of Regulations, title 2, section 11021 for Defendant to retaliate against Plaintiff for complaining about illegal practices. Defendant violated Government Code section 12940, subdivision (h), and California Code of Regulations, title 2, section 11021 by retaliating against Plaintiff for his complaints of race, disability, military-status, or sexual orientation-based harassment and discrimination by, among other things, denying to promote him, extending his probationary period, refusal to allow him to accrue time off while on military leave, unfairly disciplining him, and creating an overall hostile work environment.

343. Plaintiff complaints regarding illegal discrimination, harassment, and retaliation were substantial motivating reasons for Plaintiff's lack of promotion, extended probationary time, lack of accrued time off while on military leave, unfair disciplinary actions, and the creation of the overall hostile to most conditions of employment.

344. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

345. As an actual and proximate result of Defendant's willful and intentional retaliation, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

346.    As an actual and proximate result of Defendant's aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff(s) also seek(s) "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including back pay, reimbursement of out-of-pocket expenses and any such other relief that this Court deems proper.

347.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff suffered physical injury. Plaintiff experienced weight loss, poor appetite, nausea, depression, insomnia, early awakening, restless sleep, fatigue, anxiety, and loss of concentration. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

348.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other emotional distress. Plaintiff claims general damages for mental distress in an amount according to proof at time of trial.

## EIGTH CAUSE OF ACTION

### CFRA/FMLA Interference; Gov. Code 12945.2

349.    The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

350.    This is a claim for relief arising from Defendant's interference with Plaintiff's protected leave, in violation of Government Code section 12945.2—the California Family Rights Act, and the Family Medical Leave Act, 29 United States Code section 2601.

351.    Defendant is an eligible employer as defined by California Government Code section 12945.2(c)(2)(A). Defendant is a private employer with over 50 employees. (29 U.S.C. § 2611(4)(A); 29 C.F.R. § 825.104(d))

352.    Pursuant to CFRA/FMLA, an employer must provide a covered employee with up to twelve (12) weeks of job-protected leave.  Further, it is unlawful to interfere with, restrain, or deny an employee's right to take CFRA/FMLA leave and it is also unlawful to use an employee's CFRA/FMLA leave as a negative factor in any employment decision. (Gov. Code, § 12945.2; 29 U.S.C § 2615(a), (b).)

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

353.    Plaintiff was eligible for protected family care leave pursuant to Government Code section 12945.2(a) and, because he had more than twelve (12) months of service with Defendant and had at least 1,250 hours of service over the previous twelve (12) months. (29 U.S.C. § 2611(2)(A).)

354.    Plaintiff took leave for stress and a previous back injury.

355.    Plaintiff provided reasonable notice of his need for family care leave, including its expected timing and length, and provided sufficient medical documentation to prove his injuries.

356.    Defendant refused to grant Plaintiff's request for CFRA/FMLA leave based on insufficient medical document, although substantially similar documentation had been previously accepted for the purposes of FMLA leave.

357.    Plaintiff was harmed.

358.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

359.    Defendant is directly liable for the discriminatory and illegal conduct carried out by its officers, directors, managers, supervisors, managing agents, and employees, and Plaintiff further alleges that this conduct was carried out in the scope and course of employment of any such individuals.

360.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff has suffered physical injury. Plaintiff experienced nausea, insomnia, restless sleep, fatigue, and severe headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

361.    As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other non-economic damages. Plaintiff experienced embarrassment, humiliation, stress, low self-esteem, depression, anxiety, and suicidal thoughts. Plaintiff claims general damages for mental distress and other non-economic damages in an amount according to proof at time of trial.

///

///

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

57

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, as follows:

1.    For compensatory damages, including, but not limited to lost wages and non-economic damages in the amount according to proof;

2.    For attorneys' fees and costs pursuant to all applicable statues or legal principles;

3.    For cost of suit incurred;

4.    For prejudgment interest on all amounts claimed pursuant to Civil Code sections 3287 and/or 3288; and

5.    For such other and further relief as the court may deem proper.

Date:  December 21, 2017           By: _____/s/ Tracy C. Law_____

LAWRANCE A. BOHM, ESQ.
ZANE E. HILTON, ESQ.
TRACY C. LAW, ESQ.

Attorneys for Plaintiff,
MIGUEL AGUILERA

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury for this matter.

Date:  December 21, 2017           By: _____/s/ Tracy C. Law_____

LAWRANCE A. BOHM, ESQ.
ZANE E. HILTON, ESQ.
TRACY C. LAW, ESQ.

Attorneys for Plaintiff,
MIGUEL AGUILERA

**Plaintiff's Complaint for Damages and Demand for Jury Trial**
*Aguilera v. Contra Costa County Sheriff's Office*
Case No.:

Lawrance A. Bohm, Esq.
Zane E. Hilton, Esq.
Tracy C. Law, Esq.